William J. Quinn, J.
Petitioner, presently incarcerated at the Clinton Correctional Facility, Clinton County, New York, has brought on a CPLR article 78 proceeding wherein he alleges that the disciplinary proceedings at the prison violated constitutional due process. Petitioner also contends that the disciplinary proceedings were conducted in violation of the codes, rules and regulations of the State of New York pertaining to correctional services. A further assertion is made by the petitioner that his constitutional First Amendment rights have been breached, in that his right to the free exercise of his religious beliefs and the right to worship God according to the dictates of his conscience have been unreasonably restricted.
On the basis of a pro se petition dated May 2, 1975, the Honorable Harold Soden, Justice of the Supreme Court, on June 25, 1975, signed a decision and order setting this matter down for determination at the August 5, 1975 Special Term of Supreme Court in Clinton County. In January of 1976, petitioner obtained legal assistance in this proceeding and the matter was set down for an evidentiary hearing, which was held on April 13, 1976 at a Special Term of Supreme Court in Clinton County.
Petitioner, a semiliterate, whose primary language is Span *309 ish, has been confined to Unit No. 14 of the special housing unit at Clinton Correctional Facility, for adhering to what he avers is a serious, sincere religious belief that requires him not to shave. Petitioner has been so confined since May of 1974, and his conditional release date is presently set for October 5, 1976. However, with restoration of the good time stayed as a result of the within contested disciplinary hearing, his conditional release date would have been March 5, 1975.
Petitioner contends that he has been continually confined since May of 1974 to Special Housing Unit No. 14, which is the unit within the Clinton Correctional Facility for solitary confinement; and that an inmate who is removed from the general population and placed in Unit No. 14 as a result of a disciplinary action, is subject to a drastic adverse change in the conditions of his confinement, and is further subjected to loss of good-time credit. Petitioner asserts that the more drastic confinement and loss of good-time credit is a sanction authorized for major misconduct, and is a deprivation of such magnitude as to be sufficiently embraced within the due process clause of the Fourteenth Amendment of the Constitution.
Under New York’s disciplinary scheme, confinement in a disciplinary cell, or the withholding of good-time credits, is imposed by two types of disciplinary hearings, namely, that of the adjustment committee and that of the superintendent’s proceeding (7 NYCRR Parts 252, 253). The adjustment committee is a three-member body which is required to meet at least once weekly at the Clinton facility. Said committee receives from the superintendent of the facility, a copy of each misbehavior report and each infraction slip which has been drawn up against an inmate. After review of the charges against an individual inmate, the committee calls him before it, and allows him to present an explanation. If the charge made against the inmate is deemed of a serious nature, the adjustment committee may recommend a superintendent’s proceeding to be held. If no such recommendation is made, the adjustment committee then determines the disciplinary action that should be imposed. A superintendent’s proceeding is held "where there is reasonable cause to believe that an inmate’s behavior has constituted a danger to life, health, security or property, or that an inmate has deliberately failed or has refused to follow the guidance and or counseling of the adjustment committee”. (7 NYCRR 253.1 [a].)
*310 The person appointed to conduct a superintendent’s proceeding designates an institutional employee to furnish assistance to the inmate. (7 NYCRR 253.3 [a].) Assistance is permitted only from an employee and not from another inmate.
The employee assistant is to deliver a copy of the formal charge to the inmate at least 24 hours prior to the proceeding. He is required at that time to ask the inmate whether there is "any factual matter that can be presented in his behalf’ and to subsequently investigate "any reasonable factual claim the inmate may make.” (7 NYCRR 253.3 [b].) Prior to the commencement of the proceeding, the employee assistant delivers to the hearing officer "[a] written report of the action taken and the results of the investigation, if any, including documentary evidence and statements of witnesses interviewed”. (7 NYCRR 253.3 [c].)
At the proceeding, the hearing officer is to ask the inmate whether he admits or denies the charge. (7 NYCRR 253.4 [b].) If the inmate denies the charge, the hearing officer "shall interviéw one or more employees who witnessed or have direct knowledge of the incident and he may also interview any other person who can be of assistance in contributing relevant information.” (7 NYCRR 253.4 [c].) The inmate is not present when the witnesses are interviewed.
The inmate, under existing regulations, is not permitted to call witnesses or present documentary evidence in his defense, nor is he permitted to confront or cross-examine witnesses who made statements against him. As a result, his sole defense is to deny the charge and offer an explanation.
After the proceeding is concluded and the hearing officer has reached a decision, the inmate is to be notified of the result by a written statement setting forth the disposition and the evidence relied upon. (7 NYCRR 253.4 [i].) The statement is not required to set forth the reasons for the disciplinary action taken by the hearing officer.
The superintendent’s proceeding may impose disciplinary action causing an inmate to forfeit accrued good behavior time (7 NYCRR 253.5 [a] [7]), to be confined to his cell ("keep-locked”), or to be placed in a special housing unit such as Clinton’s Unit No. 14. (7 NYCRR 253.5 [a] [4].) There is no limitation on the amount of time an inmate may remain in the unit or in "keeplock” pursuant to a disposition of a superintendent’s proceeding. However, any period longer than *311 60 days must be approved by the Commissioner of Correctional Services. (7 NYCRR 253.5 [a] [4].)
One question appears paramount in the instant proceeding —namely, was the petitioner’s Fourteenth Amendment right, that is, not to be deprived of liberty without due process of law, violated by the procedures of the adjustment committee and the superintendent’s proceedings?
A consideration of Wolff v McDonnell (418 US 539) is pertinent herein, relative to due process. In every case involving disciplinary proceedings governed by Wolff, guidelines have been set down for the preservation of prisoners’ due process protection, based on the proposition that (p 556) "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.” In Wolff, the United States Supreme Court set down the minimum requirements of due process for prison disciplinary proceedings:
(a) The charged party must be afforded a chance to marshal the facts in his defense and to clarify what the charges are. Therefore, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges * * * At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee.” (418 US at p 564.)
(b) "Where an illiterate inmate is involved * * * or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.” (418 US at p 570.)
(c) "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be * * * hazardous to institutional safety or correctional goals.” (418 US at p 566.)
(d) There must be a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken.” (418 US at p 563.)
The testimony adduced regarding petitioner’s time in soli *312 tary confinement points up a particular problem regarding the application of Wolff v McDonnell (supra). Since Wolff was decided by the Supreme Court on June 26, 1974 and was not to be applied retroactively (Wolff, supra, p 573), the petitioner’s adjustment committee proceedings between May 23, 1974 and June 26, 1974 must be considered under pre- Wolff standards. Petitioner’s subsequent adjustment committee and superintendent’s proceedings actions after May 26, 1974 are to be viewed under the minimum standards set up by Wolff.
The testimony adduced and the evidence presented in the instant case reveal that an inmate of the Clinton Facility, confined in Unit No. 14 of the special housing unit, is subject to severe deprivations as opposed to confinement in the general population of the facility. The conditions of confinement in Unit No. 14 are similar whether ordered by the adjustment committee or by superintendent’s proceedings. During petitioner’s confinement to Unit No. 14 from May 23, 1974 to May 19, 1975, he was not afforded written notice of the charges against him; further, he was not afforded an opportunity to present evidence, nor was he given a written statement of the evidence relied on and the reasons for the disciplinary action taken. The testimony and evidence further revealed that superintendent’s proceedings from May 20, 1975 to the present were held for the same reasons that adjustment committee proceedings were held prior thereto; this, despite the testimony by a Clinton facility security official who stated that the adjustment committee dealt with less serious misbehavior, and the superintendent’s proceedings with more serious misbehavior. Petitioner’s alleged misbehavior in all proceedings was testified to as similar, and it was only after the adjustment committee was deprived of its right to confine an inmate in Unit No. 14, by a change in the correctional facility regulations in May of 1975, that the superintendent’s proceedings were utilized for apparently the same offenses — those offenses being in the main, refusing to shave and obtain a haircut. For his misbehavior, the adjustment committee, each week from May 23, 1974 to May 19, 1975, ordered petitioner confined in Unit No. 14. For similar behavior, superintendent’s proceedings have confined petitioner in Unit No. 14 from May 20, 1975 to the present. In addition, seven months of petitioner’s goodtime has been stayed. No evidence has been offered here to explain this imposition of additional punishment.
*313 Petitioner’s good behavior report, submitted to the court, was computed to be one year and four months’ good behavior allowance, setting a possible conditional release date of March 5, 1976. The time allowance committee of the Clinton facility considered petitioner’s position on January 15, 1976, and made a recommendation as to the amount of goodtime he should actually receive on the computation of his sentence. 7 NYCRR 261.3(g) provides for recommendations by the time allowance committee as to whether petitioner’s behavior merited restoration of some or all of the goodtime declared lost in superintendent’s proceedings, and to set forth its reasons. This the committee failed to do. But it did, however, grant petitioner all nine months of goodtime otherwise available to him, and gave as a reason for this dual recommendation, the simple statement, "poor adjustment.” Restoration of the seven months of goodtime stayed would make petitioner immediately eligible for conditional release.
The pre- Wolff requirements of due process govern prison disciplinary proceedings as enumerated in Sostre v McGinnis (442 F2d 178, cert den sub nom. Oswald v Sostre, 404 US 1049), require that an inmate be given adequate notice, be confronted with the accusations, informed of the evidence against him, and be given an opportunity to explain his actions. The testimony adduced herein, in the opinion of this court, discloses that the procedures of the adjustment committee in the instant case were inadequate, even under Sostre. The unrefuted testimony of the petitioner herein was that he never knew more than a few minutes in advance when the committee was going to meet; that he was never given notice of what the charges were; and he never received a statement of the evidence against him relied upon. Under such circumstances, both under Sostre and subsequently under Wolff, petitioner was given no reasonable opportunity to explain the charges. It is disclosed by testimony herein that superintendent’s proceedings against the petitioner from May 26, 1975 to the present also failed to meet the minimum due process requirements set forth in Wolff, in that the statements by the finders of fact as to the evidence relied on and the reasons for the disciplinary action taken, were "catch-all” phrases, such as "on reports contained in formal charges,” and as such, were inadequate. Such "catch-all” phrases give no reason for the disciplinary action taken. Mr. Justice White stated for the majority in Wolff (p 565): "the provision for a written record *314 helps to insure that the administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly.” Chief Judge Breitel, in Wilkinson v Skinner (34 NY2d 53, 63, concurring opn) also stated: "There must be at least a description of the punishment imposed, and if imposed, the reasons for the imposition, and whether and how plaintiff was so advised.” Further, Judge Wachtler, speaking for the majority in Wilkinson stated (p 57): "If detention officials did not have to give reasons for their actions in punishing or withholding privileges from an inmate, they could in effect, act in an unconstitutional manner safely screened from court or administrative review.”
Petitioner, upon his incarceration, proclaimed to correction facility officials that he had taken a vow and made a pact with God, not to allow a razor to come upon his head. Petitioner was punished for his refusal to shave, by confinement to Special Unit No. 14 (solitary confinement) from May, 1974 to the present, for this infraction of the facility’s regulations, and he contends that his constitutional right, under the First Amendment, to the free exercise of his religious beliefs, has been breached.
The Clinton Correctional Facility, through its official, has here testified that the security of the institution demands that facility officers be able to readily identify inmates and that the growth of beards could cause indentification problems; and further, that the health, safety and sanitation of the general population of the facility are adversely affected by facial hair. A third reason advanced was the possibility of hiding contraband in long facial hair.
Freedom to practice one’s religion is one of the most cherished values articulated in the United States Constitution (Sherbert v Verner, 374 US 398); and this, the right in question, wearing a beard out of religious conviction, is entitled to a showing of substantial governmental interest that justifies its curtailment. (See Cruz v Beto, 405 US 319.)
The facility’s interest in the facial hair situation as to any given individual is adequately covered in Teterud v Gillman (385 F Supp 153, 160) wherein the court stated in somewhat similar arguments advanced by a facility: "the Court must conclude that the state has not advanced 'reasons imperatively justifying’ their infringement of the plaintiff’s constitutional right to the free exercise of his religion. Hairnets, hair *315 search and reidentification provide viable less restrictive alternatives which better accommodate the constitutional rights of the plaintiff and the institutional needs of the penitentiary.”
"Reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.” (Cruz v Beto, supra, p 322, n 2.)
The Clinton facility has recognized that an inmate may circumvent a hair regulation if prompted by a sincere religious belief, in that on May 21, 1975, a memorandum was issued by the Commissioner of the Department of Correctional Services, which made it a departmental policy that native American Indians may wear their hair at any length desired. Petitioner herein thus contends that the interests of the facility might be similarly accommodated with the practice of his religion by refusing to shave.
This leaves but one remaining fact to be viewed — that of whether or not petitioner is exercising a sincere religious belief. The respondents herein have offered no evidence to show that petitioner’s statements of his belief are not made in good faith. This, coupled with the fact that petitioner has borne solitary confinement for a continuous 23 months, is worthy of consideration; and this court’s opinion is that petitioner’s protestations of religious belief are made in good faith. (McGuire v Wilkinson, No. B-75-338, US Dist Ct, Conn, Nov. 21, 1975.) The lateness of the acquisition of the belief is only a circumstance to be considered in determining sincerity. (Smith v Laird, 486 F2d 307.)
Respondents have kept petitioner confined in solitary confinement for approximately two years. In the opinion of this court, upon all the evidence here submitted, he was confined without consideration of the procedural safeguards mandated by the courts, even before the Supreme Court’s decision in Wolff. When the rules and regulations governing the adjustment committee were repealed, petitioner was kept in solitary confinement by another disciplinary body, again, in the opinion of this court, without being afforded the minimal procedural requirements mandated by the United States Supreme Court. Because respondents have failed to accord petitioner his Fourteenth Amendment right to due process, it is this court’s opinion that the most tangible of petitioner’s losses should be returned to him, that is, his good-time behavior allowance. Further, the records of all proceedings confining *316 petitioner to the special housing unit should be expunged from his institutional file.