*633 OPINION OF THE COURT
Paul J. Yesawich, Jr., J.
In this article 78 proceeding petitioner, an inmate of the Elmira Correctional Facility, seeks to annul the disposition of a superintendent’s proceeding which, as modified by the Commissioner of Correctional Services, ordered the loss of 60 days of good time, and to expunge from his institutional files all disciplinary and other records arising out of this proceeding.
Charged with misbehavior in an incident which occurred on July 23, 1978, petitioner appeared before the Facilities Adjustment Committee on July 24 and denied the charges. The committee affirmed the charges and determined he should be placed in keeplock for seven days and lose all privileges for 21 days. When he protested and verbally abused the committee and Correction Officer English, he was ordered to be placed in the Special Housing Unit (SHU) where he was strip searched. It was claimed he balked at being put into the cell, assaulted one of the escorting correctional officers and that the officers were required to use force to get him into the cell. As a result of this incident, an inmate misbehavior report and a use of physical force report were filed on the same day. An adjustment committee which met the following day, July 25, to review this incident, ordered him to remain in the SHU pending a superintendent’s proceeding. On July 31 he was served with formal written notice of the charges to be heard at that proceeding and, pursuant to 7 NYCRR 253.3, was furnished employee assistance.
Allison and an inmate witness presented an entirely different account of the events in the SHU than that set out in the formal charges lodged against him. In addition, both gave a picture of the strip search which, if believed, could have shown Allison was hectored during that procedure and possibly deliberately provoked to behave as he did at the cell door.
The superintendent’s proceeding was held on August 18, 1978 after Allison had been confined to the SHU for 26 days. At that proceeding, it was determined that he should serve 90 days in SHU and lose 120 days of good time. Upon the automatic review of this disposition, on December 8, 1978, the loss of good time was reduced to 60 days and his lost time situation was to be further reviewed by petitioner’s Time Allowance Committee.
Absent exigent circumstances, a superintendent’s pro *634 ceeding should be held within seven days after an inmate has been confined to the SHU. (See Letter of New York State Commission of Correction, Oct. 26, 1977, "Re Grievance Cal, #A-883-76.”) In my view, Powell v Ward (542 F2d 101) is controlling. Respondents do not proffer any convincing reason why the due process requirements respecting the time an inmate can be kept in isolation pending a hearing should be any different for men than for women.
Even though it is not claimed permission for an extension of time was obtained from the Commissioner of Correctional Services, respondents have attempted to explain the delay by a letter from the Head Correction Clerk at Elmira, who states he was informed there was a "necessary delay” in the superintendent’s proceeding due to "in depth investigations” of a "serious incident” in the mess hall on July 9, 1978, and an attempted escape on July 11. This letter can be accorded no weight as to the reasons for the delay for it is not sworn to by anyone having personal knowledge of those reasons. But even if this technicality was not taken into account and the letter deemed to be some evidence of the facts recited therein, still the in-depth investigations which purportedly caused the delay are not shown to be the kind of unusual or emergency circumstances envisioned by Powell (supra). Consequently, there is no adequate explanation and no showing of exigency so as to permit overlooking the fact that petitioner was held in the SHU for 26 days before the superintendent’s proceeding was held. This delay constituted a violation of his due process rights.
Irregularities in the conduct of the superintendent’s proceeding also occurred. For example, the hearing officer interviewed two correction officers who had witnessed the event, but provided a tape of only one of those interviews, a procedure criticized in Romano v Ward (96 Misc 2d 937). More significantly, the hearing officer gave no reason for the punishment meted out. Considering its severity the inmate should have been given a reason for the disciplinary action taken. (Wolff v McDonnell, 418 US 539; see, also, Wilkinson v Skinner, 34 NY2d 53, 57.)
And the failure of either the employee assisting or the hearing officer to make some investigation of petitioner’s claim that he was harassed during the strip search raises a question as to the propriety of the penalty. Even if the hearing officer totally discredited Allison’s description of the *635 events when he was being put into his cell, nothing in the correction officers’ reports or testimony mentioned the strip search at all. If Allison’s and his witness’ version of the strip search had any validity, the hearing officer might well have found Allison’s refusal to go into his cell was provoked, in whole or in part, by the manner in which the strip search was conducted.
Also, the superintendent’s proceeding report prepared for the inmate and for the commissioner’s automatic review lists “None” as the inmate’s explanation of the events. That statement is obviously incorrect and may have given the commissioner an erroneous impression of the evidence. Allison presented a written document as well as his taped testimony, both of which gave an explanation of events different from the correction officers’ versions.
 Inasmuch as the superintendent’s proceeding was held 26 days after Allison had been confined and no emergency or unusual circumstances were shown, and in light of the procedural irregularities noted, the petition should be and hereby is granted. As Allison has already served 90 days in SHU, it would be inappropriate to remit the matter for a new hearing. (Matter of Justice v Smith, 69 AD2d 1018.)