Howard JACOBSON, Plaintiff,

v.

Thomas A. COUGHLIN, III and Eugene LeFevre, Defendants.

No. 81–CV–635.

United States District Court,
N. D. New York.

Oct. 8, 1981.

Alan H. Levine, Clark, Wulf, Levine & Peratis, New York City, for plaintiff.

Robert Abrams, Atty. Gen. by Alan S. Kaufman, Asst. Atty. Gen., Albany, N. Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff Howard Jacobson, an inmate at Clinton Correctional Facility, commenced this action under 42 U.S.C. § 1983 against defendants Thomas A. Coughlin, III, Commissioner of the New York State Department of Correctional Services, and Eugene LeFevre, Superintendent of Clinton Correctional Facility. In his complaint, plaintiff challenged the constitutionality of a Superintendent's Proceeding at which plaintiff was found guilty of attempted escape and unauthorized use of equipment. Plaintiff also challenged the constitutionality of the punishment imposed, *viz.*, nine months of disciplinary segregation in the Special Housing Unit and the revocation of nine months of good time credits. Following a hearing, this Court granted a preliminary injunction directing defendants either to release plaintiff from Special Housing or to commence a new Superintendent's Proceeding within seven days. The injunctive re-

lief was based on a finding that the hearing officer relied on confidential information without disclosing to plaintiff the substance of that information and without setting forth the security or safety concerns that prompted the refusal to disclose the information to the plaintiff and the reasons why the hearing officer believed the confidential information to be credible.

This matter is now before the Court on plaintiff's motion for preliminary and permanent injunctive relief challenging the constitutionality of the procedures used at plaintiff's second Superintendent's Proceeding on the underlying disciplinary charges. Specifically, plaintiff alleges that he was denied due process in that: (1) he was punished for attempting to assert a defense to the charges; (2) he was not permitted to call witnesses in his behalf at the hearing; (3) he was not provided with a proper employee assistant, and (4) he was not shown some of the evidence on which the hearing officer relied.

A hearing on this motion was held on August 25, 1981. At that hearing, counsel for the defendants provided the Court with a transcript of the second Superintendent's Proceeding. While there remains some dispute over the inferences to be drawn from the record concerning issues "1", "3" and "4", defendants conceded that none of the witnesses designated by plaintiff were called at the hearing and that plaintiff was not present at the time his witnesses were interviewed. With the consent of the parties, the plenary trial was advanced and consolidated with the preliminary injunction hearing for the limited purpose of determining plaintiff's entitlement to permanent injunctive relief. A prompt and final disposition of plaintiff's request for injunctive relief is especially appropriate in light of the fact that plaintiff has been confined in the Special Housing Unit since May 6, 1981, and because the defendants have now had two opportunities to conduct a hearing that conforms to the requirements of due process of law. Plaintiff's claim for damages against these defendants and any defenses pertinent to that claim are deferred until a later date.

For the reasons discussed below, the Court concludes that the procedures followed at the second Superintendent's Proceeding did not satisfy the minimum requirements of due process of law as set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Specifically, plaintiff was denied the right to call witnesses to testify on his behalf and in his presence at the hearing and the witness interviews that were conducted were not incorporated into the record of the hearing.

Before turning to the specific constitutional claims advanced in support of the present motion, it is necessary briefly to address defendant's motion to dismiss. Defendants contend that this suit is in nature and effect a suit against the State of New York for recovery of money damages and as such is barred by the Eleventh Amendment. It is true that plaintiff has alleged no specific involvement by Commissioner Coughlin in the Superintendent's Proceedings that give rise to this suit, and it is well settled that the doctrine of *respondeat superior* cannot support a damage recovery in a § 1983 action. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *see also Duchesne v. Sugarman*, 566 F.2d 817, 830 (2d Cir. 1977). However, in ruling on a motion to dismiss the court must construe the allegations favorably to the pleader and may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Defendant's Eleventh Amendment attack does not focus on any one of the several constitutional violations alleged to have occurred in the course of the two Superintendent's Proceedings. Accordingly, it will suffice to defeat the motion if plaintiff can prove a set of facts that would entitle him to recover on any one of his claims. As the discussion below of plaintiff's claim that he was unconstitutionally denied the right to call witnesses will dem-

onstrate, plaintiff may be able to prove that the defendants promoted a policy "which sanctioned the type of action that caused the violations." *Duchesne v. Sugarman, supra*, 566 F.2d at 831. Since it cannot be said with certainty that plaintiff seeks recovery against these state officers only in their official capacity, the Eleventh Amendment does not, standing alone, preclude plaintiff from seeking to impose individual and personal liability on the named defendants. *See Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Duckett v. Ward*, 458 F.Supp. 624, 627 (S.D.N.Y.1978). Accordingly, the motion to dismiss is denied in its entirety without prejudice to renew when the question of monetary liability is properly before the Court. At this time, the Court is concerned solely with the claims for injunctive relief, and it is well settled that the Eleventh Amendment does not shield state officials from such relief. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

## I. Inadequate Employee Assistance.

Plaintiff's first claim is that he was denied due process in that he was not provided with an employee assistant in accordance with the Correctional Services Regulations. Those Regulations provide in pertinent part:

(a) The person appointed to conduct the hearing shall designate an employee to furnish assistance to the inmate. This assistance shall be solely of an investigative nature. The employee is not intended to and may not act as an advocate for the inmate. If the inmate elects, such employee shall be of the inmate's choice selected from a list of available employees established by the superintendent, or any other employee upon approval of the superintendent.

7 N.Y.C.R.R. § 253.3(a). Under the Regulations, the assistant is supposed to present the notice of the charges to the inmate and explain to the inmate the nature of proceeding and the charges. *Id.* at § 253.3(b). In addition, the assistant must "ask the inmate whether there is any factual matter that can be presented in his behalf and he shall investigate any reasonable factual claim the inmate may make." *Id.* Upon completion of the investigation, the assistant is required to submit a written report to the hearing officer detailing the actions taken on the inmate's behalf and the results of the investigation, "including documentary evidence and statements of witnesses interviewed. . . ." *Id.* at § 253.3(c).

The procedures employed by Captain Fuller, the hearing officer at the second Superintendent's Proceeding, failed to comply with these regulations in several respects. On the Friday before the second hearing began, Corrections Counselor Santor served plaintiff with the formal notice of the proceeding and informed him of the charges and of his right to have witnesses interviewed by an employee assistant. Defendant's Exhibit B; PT. 2–5. Plaintiff had not yet prepared a witness list, but requested that Officer Boisseau, plaintiff's supervisor in the prison law library, be designated as his assistant. Mr. Santor told plaintiff that he would be away from the facility over the weekend and intimated that Mr. Boisseau might be unavailable. PT. 8. During the weekend, plaintiff also asked a priest to act as his assistant, but the priest declined.

When the second Superintendent's Proceeding commenced on Monday, August 3, 1981, plaintiff again asked that Boisseau be designated as his assistant. Captain Fuller, the hearing officer, explained to plaintiff that the assistant's function is simply to act as an investigator and not as an advocate for the inmate. Captain Fuller then provided plaintiff with the list of available assistants, but plaintiff responded that because he didn't know any of these people, he did not think that any purpose would be served by choosing one of them. Rather, he wanted someone who, like Mr. Boisseau, was familiar with the procedures in the yard and in the law library, where plaintiff had been working prior to the alleged escape attempt.

Captain Fuller then assured plaintiff that he would personally act as the employee assistant and would interview the individuals that plaintiff listed as witnesses. PT. 16. In an effort to insure the efficacy of this unusual procedure, plaintiff explained what he wanted to establish through the various witnesses. PT. 13–16; T. 1–2, 7–22.

While Captain Fuller's decision to designate himself as the employee assistant was unusual, nothing in the language of the rule expressly prohibits it and, more importantly, plaintiff eventually agreed to this procedure. Moreover, whatever ambiguity inheres in the wording of the regulation, *Romano v. Ward*, 96 Misc.2d 937, 409 N.Y.S.2d 938, 940 (Sup.Ct.1978), it is clear from this record that plaintiff was offered a choice, but declined the opportunity to choose an assistant from the available list.

This conclusion does not end the matter, however, because on this record it cannot be said that Captain Fuller adequately discharged his responsibilities as plaintiff's employee assistant. First, contrary to the Regulations and his assurance to plaintiff, Captain Fuller did not personally interview the witnesses; rather, the witnesses were interviewed by several Correctional Sergeants. Defendant's Exhibit: Superintendent's Proceeding Report, August 5, 1981—"Inmate Explanation." Second, plaintiff had no access to the statements of the witnesses interviewed and, with respect to some of the witnesses, he was unaware of their identities. *See Romano v. Ward, supra*, 409 N.Y.S.2d at 940. Third, defendants have not provided the Court with the final investigative report which, under the Regulations, Captain Fuller was required to prepare and include in the record of the hearing. 7 N.Y.C.R.R. § 253.3(c).

With respect to certain of the inmates who were "interviewed" by Corrections Sergeants, the Superintendent's Proceeding Report states only that "all interviewed denied knowledge of the incident." However, not only were these interviews not conducted by Captain Fuller in his assumed role as the employee assistant, it does not appear that these "interviews" were recorded or made a part of the record. It is, therefore, impossible to determine what questions were asked of these witnesses; indeed, it is impossible to determine which inmates were interviewed.

While the substantive and procedural requirements of section 253.3 may go beyond the minimal safeguards recognized by the United States Supreme Court, *see Amato v. Ward*, 41 N.Y.2d 469, 393 N.Y.S.2d 934, 362 N.E.2d 566 (1977), a violation of such state-created guidelines may give rise to a federal due process claim that is actionable under 42 U.S.C. § 1983. *Duckett v. Ward, supra*, 458 F.Supp. at 627, citing *Lathrop v. Brewer*, 340 F.Supp. 873, 881–82 (S.D.Iowa 1972). There is ample support for the proposition that where such violations occur, the inmate may be entitled to have the disciplinary decision declared void and the disciplinary proceeding expunged from his records. *See* e. g., *Hurley v. Ward*, 61 A.D.2d 881, 402 N.Y.S.2d 870 (4th Dep't 1978); *Allison v. Wilmot*, 101 Misc.2d 632, 421 N.Y.S.2d 760 (Sup.Ct. Chemung Co. 1979); *Pyles v. Ward*, 90 Misc.2d 384, 394 N.Y.S.2d 528 (Sup.Ct. Dutchess Co. 1977); *People ex rel. Sparaco v. Superintendent, Green Haven Correctional Facility*, 89 Misc.2d 416, 391 N.Y.S.2d 809 (Sup.Ct. Dutchess Co. 1977); *Ortiz v. Ward*, 87 Misc.2d 307, 384 N.Y.S.2d 960 (Sup.Ct. Clinton Co. 1976).

It is not necessary, however, for this Court to finally determine whether plaintiff was deprived of his liberty rights without due process of law by Captain Fuller's failure to abide the state regulations concerning the duties of an employee assistant. In light of this Court's conclusions concerning plaintiff's claim that he was denied the right to call witnesses at the hearing (discussed below), it will suffice to say that plaintiff has demonstrated that he is likely to succeed on the merits of his inadequate assistance claim. Since the defendants may have construed this Court's consolidation order as having been limited to the witness issue, the Court will not rest permanent injunctive relief on the inadequate assistance ground alone.

## II. The Denial of Plaintiff's Right to Call Witnesses at the Hearing.

■ At the outset of the second Superintendent's Proceeding, plaintiff asked Captain Fuller if he would be allowed to call witnesses. Captain Fuller responded that plaintiff would be allowed "to have witnesses give statements in supporting (sic) your defense." PT. 2. Later, the following exchange occurred:

Captain Fuller: Your (sic) not going to ask any questions.

Plaintiff: I don't know, first of all I'd like to ask the witnesses questions, but if you won't allow me, there is nothing I can do. (PT. 13)

It is not entirely clear from the context of the foregoing exchange whether the reference concerned plaintiff's interest in questioning adverse witnesses or witnesses called to establish his defense or both. However, Captain Fuller then clarified the matter by stating categorically that plaintiff would not be allowed to question any witnesses; rather, Captain Fuller would act as an intermediary and would prevent plaintiff from discovering even the identity of any witness who presented exculpatory testimony. PT. 15.

Immediately after this preliminary conference between Captain Fuller and plaintiff, the formal proceeding began. Captain Fuller, in the course of reviewing plaintiff's formal rights under state regulations, stated as follows:

Captain Fuller: You shall be permitted to call witnesses on your behalf provided that so doing does not jeopardize institutional safety or correctional goals. You're aware of that?

Plaintiff: Yes.

Captain Fuller: And you plan on calling witnesses on your behalf?

Plaintiff: I do.

Captain Fuller: OK. (T. 4).

In light of the defendants' stipulation that witnesses were not called at the hearing and that plaintiff was not present when witnesses were interviewed, it is clear that Captain Fuller's formal recitation of plaintiff's "right to call witnesses" meant nothing more than that plaintiff would be permitted to designate individuals who would then be interviewed outside his presence and not at the hearing itself, and further that plaintiff would have no direct access to the witness interviews and would not be informed of their identities.

In *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974), the United States Supreme Court held that in addition to notice and a statement of the evidence relied upon and the reasons for disciplinary sanctions, "the inmate facing disciplinary proceedings should be allowed to call witnesses ... in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Court reaffirmed *Wolff's* holding on the qualified right to call witnesses, and emphasized *Wolff's* distinction between the inmate's right to call witnesses in his defense and the institutional considerations that moved the Court to leave the issue of confrontation and cross-examination of adverse witnesses to the "sound discretion of the officials of state prisons." *Wolff*, 418 U.S. at 569, 94 S.Ct. at 2981; *Baxter*, 425 U.S. at 321–22, 96 S.Ct. at 1559. Based on this distinction, the *Baxter* Court held only that the Fourteenth Amendment does not require prison officials to provide written reasons justifying their decision not to permit the inmate to confront and cross-examine adverse witnesses at a prison disciplinary proceeding. *Baxter*, 425 U.S. at 322, 96 S.Ct. at 1559.

In this Court's view, the scope of an inmate's constitutional right to call witnesses in his defense at a disciplinary proceeding in New York State prisons is controlled by Judge Stewart's decisions in *Powell v. Ward*, 392 F.Supp. 628 (S.D.N.Y.1975) (Powell I), mod. in other respects, 542 F.2d 101 (2d Cir. 1976) and *Powell v. Ward*, 487 F.Supp. 917 (S.D.N.Y.1980) (Powell II), mod. in other respects and aff'd., 643 F.2d 924 (2d Cir. 1981). In *Powell I*, Judge Stewart issued a preliminary injunction designed to bring disciplinary proceedings at

New York's Bedford Hills Correctional Facility for Women into conformity with the procedural due process standards enunciated in *Wolff*. The 1975 injunction provided, in pertinent part as follows:

1. Defendants shall conduct all Adjustment Committee or Superintendent's Proceedings, or other disciplinary proceedings that may result in an inmate at Bedford Hills Correctional Facility being confined in a Special Housing Unit or Segregation Unit, in accordance with the following procedures:

a) Formal written notice of charges must be served on the inmate at least 24 hours before the hearing;

b) The inmate shall be permitted to call witnesses on her behalf provided that so doing does not jeopardize institutional safety or correctional goals. The written notice of charges served in accordance with Paragraph 1(a), shall inform the inmate of her right to call witnesses;

c) If permission to call a witness is denied, the party conducting the hearing shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented by the witness.

643 F.2d at 928.

The State defendants in *Powell I* (including defendant Coughlin's predecessor in the office of Commissioner of Corrections) appealed only from two provisions of the injunctive order that did not involve the right to call witnesses. *See Powell v. Ward,* 542 F.2d 101 (2d Cir. 1976).

Thereafter, the Department of Corrections amended its statewide regulations concerning the conduct of Superintendent's Proceedings so as to incorporate the *Wolff-Powell I* requirement that inmates be afforded the right to call witnesses absent the exigent circumstances noted in *Wolff. See* 7 N.Y.C.R.R. § 253.4(b)(1) as amended (May 14, 1980).

In 1976 and again in 1979, plaintiffs in the *Powell* litigation sought to hold the Superintendent of Bedford Hills in con-

tempt of the 1975 Order, alleging that the prior order had not been complied with. *Powell II,* 487 F.Supp. at 921. At the hearing on the latter motion for contempt, Judge Stewart found that Superintendent Curry had failed to comply with the terms of the 1975 Order:

It is undisputed that inmates are not permitted to call witnesses to testify in their presence at a hearing. Tr. at 433 and 570. Inmates facing Superintendent's Proceedings have the right to request the Hearing Officer to interview witnesses outside the presence of the inmate. Tr. at 412–413. The interviews with inmates are tape recorded, but not transcribed. Inmates requesting witnesses are not permitted to hear the tape, tr. at 571. The general policy is to inform inmates of their right to request that witnesses be interviewed by typing the following statement on the Formal Charge: "The inmate shall be permitted to call witnesses on her behalf provided that so doing does not jeopardize institutional safety or correctional goals." Plaintiff's Exhibit 15.

*Id.* 487 F.Supp. at 927.

In addition, Judge Stewart clarified the scope of the 1975 Order by holding that witnesses should be allowed to testify at the hearing in the presence of the inmate unless the prison officials determine on an individual basis that this procedure would be unduly hazardous to institutional safety or correctional goals. *Id.* 487 F.Supp at 928–29. Noting that the Department of Corrections and the former superintendent of Bedford Hills had interpreted the 1975 Order and *Wolff* to require the presence of witnesses, Judge Stewart held:

In sum, to comply with section 1(b), witnesses must be allowed to be present at disciplinary proceedings, unless the appropriate officials determine that this would jeopardize institutional safety or correctional goals.[11] If an inmate is not permitted to have witnesses present, the interview may be conducted out of her presence and tape recorded. The tape or transcript of the interview, which is to be

considered part of the record of the hearing, is to be made available to the inmate prior to or at the hearing, unless prison officials determine that this too would jeopardize institutional safety or correctional goals. In either case, a written explanation of the denial of witnesses is to be given to the inmate.

*Id.* 487 F.Supp. at 929; see also n. 11. In addition to holding Superintendent Curry in contempt of the 1975 Order and ordering expungement of records of Superintendent's Proceedings found to have been conducted in violation of the Order, Judge Stewart ordered that the preliminary injunction, as clarified, shall constitute permanent injunctive relief. *Id.* at 937.

The defendants in *Powell II* appealed not only from the portions of the 1980 Order holding them in contempt, but also on the merits of Judge Stewart's amendment concerning the right to call witnesses. The Second Circuit modified the relief granted and stated: "In all other respects we find the 1980 Order was proper." 643 F.2d at 931.

*Wolff v. McDonnell* was decided in 1974. *Powell I* was decided in 1975. Whatever doubt may have existed after *Powell I* concerning the proper contours of the due process right to call witnesses at disciplinary proceedings was dispelled by Judge Stewart's detailed explanation in *Powell II*, the permanent injunction which he issued on May 1, 1980, and the Second Circuit's affirmance of that Order in March 1981.

While it appears that the Commissioner of the Department of Corrections, a defendant here, was also a defendant in *Powell*, this Court is now presented with the contention that Judge Stewart's holdings are not controlling because the permanent injunction in *Powell II* applied only to Bedford Hills Correctional Facility and because the Second Circuit has never passed on the merits of the injunctive relief granted. This Court is constrained to disagree.

First, it is true that the injunction in *Powell* was entered only against Bedford Hills Correctional Facility and thus had no direct application to the Clinton Correctional Facility. This limitation, however, merely reflects the atomistic quality of judicial remedies; it cannot be permitted to obscure the fact that the procedures found to be constitutionally deficient in *Powell* are essentially the same as those involved here. Indeed, the procedures involved in each case emanate from the state-wide regulations contained in Title 7 of the N.Y.C.R.R. Moreover, the Commissioner has not suggested any principled basis for distinguishing between the personal and institutional interests at stake here and those involved in *Powell*. Nor is this Court aware of any substantial reason which could justify lesser constitutional safeguards for persons confined at Clinton than are mandated for those confined at Bedford Hills.

Second, defendants' assertion that "the Second Circuit has never passed on the parts of Judge Stewart's (1980) order requiring a written statement of reasons for not calling witnesses" Def. Brief at 11, is simply not true. This Court has obtained and reviewed a copy of the state defendants' brief on appeal from *Powell II*, and it is plain that defendants urged reversal of Judge Stewart's ruling concerning an inmate's qualified right to be present at the hearing when the witnesses testify. *See* Brief for Defendants-Appellants at 67, 74, *Powell v. Ward*, 643 F.2d 924 (2d Cir. 1981). It is also clear that the Second Circuit considered and affirmed this aspect of the 1980 order. *Id.* at 931.[1] The defendants' mischaracterization of the issues raised and decided on their appeal from *Powell II* can charitably be described as further "grammatical gymnastics." *Id.* at 932. It is disturbing that the state prison officials, having been unsuccessful on their appeal of Judge Stewart's rulings are now seeking to relitigate the same constitutional issues in this case.

---

1. The defendants also failed to inform the Court that they have filed a further appeal in      the United States Supreme Court.

Even if the Commissioner's participation as a defendant in *Powell* does not require application of the doctrine of issue preclusion, the constitutional relevance of Judge Stewart's ruling to the position advanced by the state defendants in this case is plainly discernable. Stated in its baldest form, the defendants would have this Court accept the proposition that although the Commissioner is bound under *Powell II* to insure that the right to call witnesses is accorded to women confined at Bedford Hills, the Commissioner is nevertheless under no constitutional obligation to extend that due process safeguard to men confined at Clinton Correctional Facility. This Court cannot simply ignore the equal protection implications of such disparate treatment of persons otherwise similarly situated.

Quite apart from the foregoing considerations, this Court essentially agrees with the reasoning advanced by Judge Stewart and other courts which have addressed the question:

> We are not persuaded that *Wolff* supports a blanket policy against allowing witnesses to be present at the hearing. The Court appears to have contemplated individualized determinations of the potential threat to security created by the presence of the inmate at the interview. True, prison administrators are to be given broad discretion in determining whether such a threat exists. *Wolff* [418 U.S.], at 566, 94 S.Ct. at 2979. But administrative necessity does not require a blanket rule which precludes the presence of witnesses when there are no countervailing concerns warranting that prohibition. Requiring prison officials to determine on an individual basis whether witnesses can be present encourages them to exercise their discretion to strike the appropriate balance between the prisoner's right to call witnesses and the prison's need to maintain order.

*Powell II*, 487 F.Supp. at 929. *See* also, *Hayes v. Walker*, 555 F.2d 625, 628–30 (7th Cir. 1977) (disciplinary hearing record must reflect basis for prison official's decision as to whether or not a particular witness can be called by the inmate); *Mawhinney v. Henderson*, 542 F.2d 1, 3 (2d Cir. 1976).

The transcript of the Superintendent's Proceeding conducted in this case on August 3 and 5, 1981, together with the defendants' stipulations (noted earlier in this opinion) clearly establish that the hearing was not conducted in accordance with established constitutional standards. Plaintiff's right to call witnesses in his behalf was summarily denied. Captain Fuller apparently construed the right to call witnesses as co-extensive with plaintiff's independent right under 7 N.Y.C.R.R. § 253.3(c) to enlist the aid of an employee assistant in collecting documentary evidence and statements from witnesses. Captain Fuller also told plaintiff that he would not be given direct access to any statements given by the witnesses and that he would not be told of their identities. PT. 15.

Nor can the refusal to permit plaintiff to be present at the hearing during the witnesses' testimony be upheld as a proper exercise of the hearing officer's broad discretion in these matters. Captain Fuller made only cursory reference to possible security concerns, and this reference was made before plaintiff had identified any of his proposed witnesses. PT. 15. Accordingly, there is simply no support in the record to suggest that Captain Fuller made an individualized determination of the "potential threat to security created by the presence of the inmate at the interview." *Powell II*, 487 F.Supp. at 929. While the record of the Proceeding does contain a finding that the witnesses interviewed denied any knowledge of the incident, these statements were related to Captain Fuller by various correctional officers, and the content of those interviews was not preserved for the record or made available to the plaintiff. *See Powell II*, 487 F.Supp. at 929 ("If an inmate is not permitted to have witnesses present, the interview may be conducted out of (his) presence and tape recorded. The tape or transcript of the interview, which is to be considered part of the record of the hearing, is to be made available to the inmate prior to or at the hearing, unless prison officials determine

that this too would jeopardize institutional safety or correctional goals. In either case, a written explanation of the denial of witnesses is to be given to the inmate.").

Having determined that plaintiff was denied his constitutional right to call witnesses in his behalf at the Superintendent's Proceeding and was not given adequate assistance in preparing his defense, this Court firmly believes that plaintiff is entitled to injunctive relief. Accordingly, it is unnecessary at this stage to address at length plaintiff's claims that he was not shown all of the evidence on which Captain Fuller relied and that Captain Fuller improperly premised disciplinary punishment on plaintiff's exercise of his right to present a defense to the charges. The Court pauses only to note that Captain Fuller did assure plaintiff that he would be shown all of the evidence, T. 17, and that there is no support in the record for Captain Fuller's statement that plaintiff's "methods caused unnecessary investigation with ensuing delay." Superintendent's Proceeding Report, "Reasons for Disciplinary Action Taken," ¶ 2. The hearing was commenced on Monday, August 3, 1981, and at that time it became apparent that plaintiff had not been provided with an employee assistant and no investigation had been made of his asserted defense. Accordingly, Captain Fuller agreed to act as the employee assistant and conduct the investigation. Thus, the necessity of adjourning the hearing on August 3 was not attributable to plaintiff. Moreover, the "investigation" of plaintiff's proposed witnesses cannot be said to have caused any undue delay, since Captain Fuller stated that he was ready to conclude the hearing the very next day. T. 41. It appears from the transcript that Captain Fuller agreed to wait until Wednesday, August 5 so that plaintiff and his counsel could meet before the hearing was concluded.

## IV. Remedy.

In fashioning an appropriate remedy for the established denial of plaintiff's constitutional rights, this Court is especially mindful of the fact that plaintiff has been confined in the Special Housing Unit for five months as a result of two unconstitutional disciplinary proceedings. In this Court's prior decision, it was determined that notwithstanding plaintiff's likelihood of success on the merits of his claims arising from the first hearing, plaintiff was only entitled to a prompt rehearing. Now, something more is required. Plaintiff's constitutional right to call witnesses was firmly established at the time of the second hearing. Five months prior to the second hearing, the Second Circuit had affirmed Judge Stewart's ruling on the right to call witnesses.

This Court concludes that plaintiff is entitled to an order directing that he be released from the Special Housing Unit and returned to the general prison population. Plaintiff is also entitled to an order enjoining any further disciplinary proceedings based on any of the events which gave rise to this litigation, and directing that all records concerning the two Superintendent's Proceedings here involved be expunged from plaintiff's prison files. This Court is not empowered to order a restoration of plaintiff's good time credits in the context of an action under 42 U.S.C. § 1983; accordingly, plaintiff's prayer for relief is denied to that extent. *Preiser v. Rodriquez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). While plaintiff also seeks compensatory and punitive damages, those issues are not now before the Court. Finally, plaintiff's request for reasonable attorneys' fees under 42 U.S.C. § 1988 is deferred until the determination of the damages claim.

## ORDER

For all of the foregoing reasons, the Court concludes that plaintiff has been and will be irreparably harmed as a result of repeated violations of his constitutional rights and that a permanent injunction should be, and hereby is entered ordering the defendants, their agents, servants and employees and all persons in active concert with them who obtain notice of this Order as follows:

(1) To release plaintiff from the Special Housing Unit and return him to the general prison population at Clinton Correctional Facility;

(2) To restore to plaintiff all privileges previously enjoyed by him, with the exception of good time credits revoked as a result of the second Superintendent's Proceeding in this matter;

(3) To expunge from plaintiff's prison files all records concerning the Superintendent's Proceedings conducted in May and August 1981, as described in the opinions issued in this matter; and

(4) To refrain from any further disciplinary proceedings against plaintiff for any of the events described in the complaint filed in this action.

In order to provide defendants with the opportunity to apply to the Court of Appeals for a temporary stay pending appeal, the terms of the foregoing order will not be effective until October 19, 1981, at 5:00 p. m. In the event that the defendants decide not to seek a stay, they are further directed to promptly notify the Court of that decision and to comply with the terms of the injunction forthwith.

IT IS SO ORDERED.