OPINION OF THE COURT
Gerard E. Delaney, J.
This is a CPLR article 78 proceeding challenging the superintendent’s proceeding which took place on March 6 and continued on March 10,1983. At the conclusion of such hearing and its administrative review on March 17, 1983, the petitioner was subjected to various forms of administrative punishment, to wit, loss of two months’ good time, 60 days’ keep lock and sundry institutional privileges.
Petitioner challenges the legality of the proceeding, inter alia, by claiming that such did not take place within the guidelines of 7 NYCRR 253.4 (b) (1) which reads: “(1) The inmate shall be permitted to call witnesses on his/her behalf, provided that so doing does not jeopardize institutional safety or correctional goals.”
By exhibits submitted by respondent on March 6, 1983, the first day of the hearing, petitioner was informed by Mr. Paul Kimelman, deputy superintendent of program services, that he (petitioner) “may be permitted to call witnesses on [his] behalf”. It was stated to petitioner “do you have any witnesses that you want interviewed?” Petitioner gave the names of Paul Fuller and (FNU) Gibbs.
*778 Apparently Mr. Kimelman later that same day then conducted tape-recorded interviews with inmates Fuller and Gibbs out of the presence of petitioner and then used such interviews, inter alia, as “reports considered” in his final determination for the hearing on March 10, 1983.
It is noted initially that this court in a similar matter entitled Matter of Walker v Reid by its order of May 15, 1981 (affd 89 AD2d 826 [no opn]) vacated a superintendent’s proceeding and ordered records thereof expunged from petitioner’s institutional records where the hearing officer in response to petitioner’s request to hear witnesses simply considered written statements by the prisoner’s witnesses. The question then becomes, “are tape recorded interviews conducted of witnesses requested by petitioner to be viewed in the same light as written statements furnished by such witnesses are when considering their propriety for use for a Superintendent’s proceeding?”
At the conclusion of Deputy Superintendent Kimelman’s examination of petitioner on March 6, 1983, he informed petitioner “Okay, I’m going to interview your witnesses and interview other witnesses and then I’ll get back to you after I’ve interviewed all of the available witnesses”. I have noted previously that 7 NYCRR 253.4 (b) states in part: “[i]f the inmate does not make any such admission, or refuses to sign, the proceeding shall continue as provided in this section and all further interviews shall be recorded stenographically or by an electronic recording device” The same section provides in subdivision (c) therein that “[t]he person conducting the proceeding shall interview one or more employees who witnessed or have direct knowledge of the incident and he may also interview any other person who can be of assistance in contributing relevant information.” It is further noted that “[u]nder the regulations, it is not enough that the hearing officer consider written statements of employee witnesses interviewed during the course of the investigation. Rather, the hearing officer is required to undertake interviews, on the record, of employees who have direct knowledge of the incident with which the inmate was charged. [Citation omitted.]” (Matter of Hilton v Dalsheim, 81 AD2d 887, 888.)
*779 It is, of course, noted, however, that in the instant case we are dealing not with employee witnesses but with witnesses whom the petitioner inmate specifically requested under section 253.4 (b) (1). The hearing officer herein did not call the witnesses to be heard in the presence of the petitioner but automatically interviewed them at a later time out of petitioner’s presence and did so by means of electronic recording. It is also noted that prior to utilizing electronic recording devices for petitioner’s witnesses the hearing officer made no statement or explanation which would indicate in any way that he was interviewing such witnesses out of the presence of petitioner because to do otherwise might “jeopardize institutional safety or correctional goals”. It is recognized that “the proceedings are specifically noncriminal in nature (7 NYCRR 252.2, 253.2, 253.4 [a]). In a superintendent’s proceeding, they have generally been conducted out of the presence of the inmate by recorded interviews of witnesses [citation omitted]. There is no provision for cross-examination in the rules, and it is not constitutionally required (Wolff v McDonnell, 418 US 539, 567).” (Matter of Wilson v Smith, 117 Misc 2d 934, 938.)
“When it is determined that possible hazards to institutional safety or correctional goals preclude a witness’ presence at the hearing, prison officials may interview her out of the presence of the inmate. However to enable the inmate to present a defense, she should, under ordinary circumstances, be permitted to listen to the tape or read the transcript, unless the prison officials determine that this would also jeopardize institutional safety or correctional goals * * *
“If an inmate is not permitted to have witnesses present, the interview may be conducted out of her presence and tape recorded. The tape or transcript of the interview, which is to be considered part of the record of the hearing, is to be made available to the inmate prior to or at the hearing, unless prison officials determine that this too would jeopardize institutional safety or correctional goals. In either case, a written explanation of the denial of witnesses is to be given to the inmate.” (Powell v Ward, 487 F Supp 917, 929.)
*780 Indeed in the instant case on March 10, 1983, when petitioner was recalled for reinterview with Mr. Kimelman he was not made aware of the substance of the interviews with his witnesses in any way nor was he apparently given access to the laboratory report wherein a testing had been made of his urine concerning the charges of use of marihuana. (Cf. 7 NYCRR 253.4 [e].) It is the opinion of this court, the hearing officer having made no determination that the presence of the witnesses during the hearing would jeopardize institutional safety or correctional goals, petitioner, therefore, had a right to be present during the conduct of the interviews of such witnesses and that the use of tape-recorded interviews was not sufficient. (See, generally, Matter of Tolden v Coughlin, 90 AD2d 929; Matter of Cutolo v Dunham, 117 Misc 2d 722; People ex rel. Cooper v Smith, 115 Misc 2d 689, 690; see, also, Jacobson v Coughlin, 523 F Supp 1247, 1251-1255.) “[I]t is clear that [the hearing officer’s] formal recitation of petitioner’s ‘right to call witnesses’ meant nothing more than that [petitioner] would be permitted to designate individuals who would then be interviewed outside his presence and not at the hearing itself, and further that [petitioner] would have no direct access to the witness interviews”. (Jacobson v Coughlin, supra, p 1251.)
Accordingly, the petition is granted and the determination of the superintendent’s proceeding held on May 6 and May 10,1983, is annulled and such determination vacated; and, accordingly, the loss of good time shall be restored and any and all reference to such proceedings and punishment inflicted thereto are ordered expunged from petitioner inmate’s records. Having reached such a determination that the superintendent’s proceeding was illegal based upon violations of petitioner’s rights under 7 NYCRR 253.4 (b) (1), (e), the other issues raised by petitioner are not reached.
Assuming petitioner has already served his keep-lock punishment and has been denied his privileges in the meantime, no new hearing is necessary under such circumstances.