■ In the Matter of THOMAS VOGELSANG, Petitioner, v PHILIP COOMBE, JR., as Superintendent of Eastern New York Correctional Facility, et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to annul a determination of the Commissioner of the Department of Correctional Services finding petitioner guilty of violating certain disciplinary rules.

In a much publicized riot at Ossining Correctional Facility occurring on January 8 through 11, 1983, inmates held 17 correction officers hostage for approximately 53 hours. On August 26, 1983, petitioner, a former inmate at Ossining but incarcerated at Eastern New York Correctional Facility since early 1983, was served with an inmate misbehavior report describing specific acts of misconduct allegedly committed by him during the Ossining disturbance and charging him with 13 institutional violations.

A superintendent's proceeding, in accordance with 7 NYCRR part 254 (revised eff June 15, 1983), was commenced on August 27 and September 2, 1983 for the in-person testimony of Assistant Inspector General (AIG) Leo Bisceglia, who supervised the investigation of the riot. During that investigation, which lasted approximately one month, 18 investigators were assigned to the task and over 400 inmates were interviewed, as well as every employee and hostage involved. On September 14, 1983, an adjourned date for the superintendent's proceeding petitioner listened to tape recordings of eight interviews with AIGs; two of these were inaudible. Relying on confidential information and statements obtained from Ossining inmate informants and correction officers who had witnessed the riot, the AIGs testified about petitioner's role in the affray. This testimony included his identification as an inmate leader, as possessing officers' keys, and as yelling, "Kill the police."

Claiming the charges were fabricated, petitioner pleaded not guilty. On two occasions during the hearing, he declared he did not wish to call any witnesses; he did, however, request that the hearing officer interview witnesses with direct knowledge of the incident. At the conclusion of the hearing, petitioner was found guilty of 11 violations including threats, takeover riot, violent conduct, urging others to participate and possession of keys. The penalty imposed was 550 days of solitary housing unit, loss of good time, loss of phone calls and loss of commissary.

We have heretofore concluded that a statement from a witness with direct knowledge of the incident involved, without more, is sufficient to support a prison disciplinary decision (*Matter of*

*Garcia v LeFevre,* 102 AD2d 1004; see, also, *Smith v Rabalais,* 659 F2d 539, 546, cert den 455 US 992). Here, there is direct evidence against petitioner in a sworn statement from Correction Officer Israel Romero that petitioner "grabbed me and ordered me to get to the back of the block". Moreover, a review of the confidential file, which was examined by the hearing officer before arriving at her decision, substantiates Romero's statement. Hence, we confirm the finding that petitioner is guilty of the following violations: threats, takeover riot, violent conduct, obstructing an employee, harassment, out of place and failure to follow regulations (Disciplinary Rules 102.10, 104.10, 104.11, 107.10, 107.11, 109.10, 109.12). The remaining charges are, however, dismissed for they are unsupported by direct evidence and a new hearing as to them would be inappropriate; not only has a significant period of time elapsed, i.e., 20 months, since the alleged misconduct and witnesses, should petitioner choose to call them, may well be unavailable, but in addition, it appears petitioner has already satisfied the bulk, if not all, of his penalty (see *Matter of Hilton v Dalsheim,* 81 AD2d 887; *Matter of Justice v Smith,* 69 AD2d 1018).

The inaudibility of two of the eight tape-recorded interviews the hearing officer conducted with the AIGs, and which petitioner listened to, does not render the record incomplete or inadequate. The testimony of six AIGs was wholly consistent and audible and the questions asked of the other two were heard and followed the same tight framework employed by the hearing officer to question the other six; only the answers were inaudible. Moreover, the questions asked of the AIGs dealt only with the interviews they had conducted, the very interviews contained in the confidential file. On this record, we are unconvinced that the inaudible responses of the two AIGs either prejudiced the proceeding or our ability to review it.

Nor do we find merit in the contention that petitioner received inadequate notice of the charges against him (7 NYCRR 251-3.1). The "incident" he was involved in was readily identifiable; it was a riot at Ossining spanning four days. The rules he allegedly violated were specified, and given the turbulence and chaos attendant upon a riot, the particulars of the offensive conduct attributed to petitioner (e.g., he allegedly "ordered inmates out of cells so correction officers could be locked in"; "yelled kill the police"; "possessed a walkie-talkie and used same") were quite clearly spelled out. He sought no explanation of the charges. In short, enough specifics were furnished so that had he chosen to, he could have effectively responded to them.

Determination modified, without costs, by annulling so much thereof as found petitioner guilty of the following violations:

conduct which disturbs others, urge others to participate, unauthorized assembly and possession of keys (Disciplinary Rules 110.20, 104.12, 105.10, 111.11); all entries in petitioner's records relating thereto are to be expunged, and matter remitted to respondents for re-evaluation of the penalty to be imposed on the remaining violations; and, as so modified, confirmed. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.