781 F.2d 24
 Abdul Yasin SALAHUDDIN, Plaintiff-Appellant,
v.
Thomas A. COUGHLIN, III, Commissioner; Harold J. Smith,
Superintendent of Attica; Richard R. Reynolds; Gerald R.
Elmore; G. Calderon; D.E. Beitz, Officer; A. Lippold,
Lt.; and All Employees of Attica Correctional Facility,
Defendants-Appellees.
 No. 339, Docket 85-2058.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 25, 1985.
Decided Jan. 8, 1986.
 
 Steven H. Latimer, New York City (David C. Leven, Prisoners' Legal Services of N.Y., New York City, on brief), for plaintiff-appellant.
 Martin A. Hotvet, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen., Robert Hermann, Sol. Gen., William J. Kogan, Asst. Sol. Gen., Albany, N.Y., on brief), for defendants-appellees.
 Before OAKES, NEWMAN and MINER, Circuit Judges.
 JON O. NEWMAN, Circuit Judge.
 
 
 1
 This appeal primarily concerns the availability of good-faith immunity to a civil rights action in a somewhat unusual context. Abdul Salahuddin appeals from a judgment of the District Court for the Western District of New York (John T. Curtin, Chief Judge) dismissing, on motion for summary judgment, his complaint, which sought relief under 42 U.S.C. Sec. 1983 (1982). Appellant contends that: (1) defendants[1] illegally confined him in a Special Housing Unit (SHU)[2] for eight days without due process of law and lack a good-faith defense because they are charged with the knowledge of their attorney as to the illegality, and (2) two other "claims" were not refuted in defendants' summary judgment papers and should not have been dismissed. For reasons that follow, we affirm.
 
 Background
 
 2
 Salahuddin was an inmate at the Attica Correctional Facility. He was charged with disciplinary violations and, following a Superintendent's proceeding, was ordered confined to an SHU for 60 days. Salahuddin brought an article 78 proceeding, see N.Y.Civ.Prac. Law & R. Sec. 7801 et seq. (McKinney 1981), to challenge this determination. He originally appeared pro se. The New York Supreme Court for Wyoming County (Joseph J. Ricotta, Justice) orally ordered that the action be converted into a habeas corpus proceeding to allow assignment of counsel to assist Salahuddin. The Supreme Court (Vincent E. Doyle, Justice) ruled in Salahuddin's favor and ordered his release from the SHU because of procedural irregularities in the Superintendent's proceeding. This decision was embodied in a judgment dated May 13, 1980, prepared by Salahuddin's attorney. The judgment was captioned "For Relief Pursuant to Article 78 CPLR," a labeling that was to have unexpected significance.
 
 
 3
 The judgment was served, and Salahuddin was released from the SHU on May 16, 1980. On June 13, 1980, the state court defendants filed a notice of appeal from the Supreme Court judgment. Under New York law, filing a notice of appeal automatically stays enforcement of an article 78 judgment, see N.Y.Civ.Prac. Law & R. Sec. 5519(a) (McKinney 1978), but does not automatically stay a habeas corpus judgment, see N.Y.Civ.Prac. Law & R. Secs. 7011, 7012 (McKinney 1980); People ex rel. Sabatino v. Jennings, 246 N.Y. 258, 158 N.E. 613 (1927). Because the face of the judgment indicated that Salahuddin had been granted relief in an Article 78 proceeding and because the attorney for the defendants did not advise his clients that the proceeding had been converted into one for habeas corpus, Salahuddin's jailers assumed that the notice of appeal stayed the Supreme Court's judgment. On June 17, 1980, after the judgment and the notice of appeal were received at Attica, Salahuddin was returned to the SHU to serve the remainder of his 60-day disciplinary sentence. Salahuddin's attorney subsequently informed defendants' attorney that this procedure was improper because the state lawsuit had been converted to a habeas corpus proceeding. Upon receipt of this communication, Salahuddin was promptly released from the SHU on June 25, 1980, and has not been returned.[3]
 
 
 4
 Salahuddin filed a pro se complaint, pursuant to 42 U.S.C. Sec. 1983. The 14-page complaint is a rambling account of numerous disagreements and confrontations between Salahuddin and prison officials at Attica. In a concluding section captioned "Legal Claim," it appears to allege two claims against the federal court defendants: first, that they denied him a transfer to a correctional facility closer to his family in violation of his First Amendment rights, and, second, that they confined him to the SHU on the basis of fabricated charges and thereby deprived him of due process rights. The complaint made passing reference to unsanitary food and infrequency of showers in the SHU but left it entirely unclear whether this description of conditions was claimed to be an independent basis for relief or only an elaboration of why the allegedly undeserved confinement in the SHU should be ended. In a subsequent complaint, ultimately consolidated with the initial complaint, Salahuddin challenged his return to the SHU for eight days after the filing of the notice of appeal in the state court proceeding. In papers filed still later, Salahuddin renewed his challenge to the denial of a transfer to a facility near his family, suggesting that the denial was in retaliation for the filing of his federal court lawsuit.
 
 
 5
 Defendants moved for summary judgment. In papers filed February 23, 1983, they contended that Salahuddin had no federally protected right to a transfer to a prison near his family. The motion papers also set forth facts endeavoring to refute Salahuddin's claim that his 60-day sentence to the SHU was imposed without due process of law. On September 28, 1983, Salahuddin filed an affidavit in opposition to the motion for summary judgment. This affidavit seems to focus on the eight-day confinement claim. It makes no reference to any claim concerning a retaliatory denial of transfer or unsanitary conditions in the SHU. Defendants supplemented their summary judgment papers on November 9, 1983, with a submission directed to the eight-day confinement claim. Defendants made it clear that they were seeking dismissal of the entire action.
 
 
 6
 On March 26, 1984, Chief Judge Curtin, understandably uncertain as to what claims Salahuddin was pressing, ordered him to file an affidavit in opposition to the summary judgment motion by June 1, 1984. After that deadline passed without a response from Salahuddin, Chief Judge Curtin ruled that the claim for a transfer to a facility near the inmate's family was insufficient as a matter of law. Then, focusing on what he evidently thought was the only other claim being pursued, the District Judge ordered Salahuddin to file by December 27, 1984, an affidavit in response to the defendants' November 9, 1983, submission, which had urged a good-faith immunity to the eight-day confinement claim. Again Salahuddin failed to submit papers as directed.
 
 
 7
 Thereafter, the District Court granted defendants' motion for summary judgment and dismissed the entire action. The Court rejected the eight-day confinement claim on the ground that defendants had established their good-faith immunity to this claim. The Court relied on Johnson v. Glick, 481 F.2d 1028 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), for the proposition that neither the actions nor the knowledge of an employee or agent can be imputed to a superior to impose liability under section 1983. Therefore, the District Judge reasoned, the knowledge of the lawyer for the state court defendants that the Article 78 proceeding had been converted to a habeas corpus proceeding could not be imputed to his clients (now the federal court defendants). Since, in the District Judge's view, the defendants were entitled to think that the state court judgment ordering release from the SHU had been stayed, he ruled that they were immune from liability for returning Salahuddin to the SHU for the eight-day interval that ended when they acquired actual knowledge that the state court judgment had not been stayed.
 
 
 8
 On appeal, Salahuddin, now represented by appointed counsel, challenges the ruling on the eight-day confinement claim and also asserts that there remain in the case unadjudicated "claims" concerning unsanitary conditions in the SHU and a retaliatory denial of a transfer.
 
 Discussion
 
 9
 1. The Eight-Day Claim. Defendants do not deny that they returned Salahuddin to the SHU on June 17, 1980, without legal justification and thereby deprived him of a protected liberty interest without due process of law.[4] Rather, they claim good-faith immunity on two grounds: It was reasonable for defendants to believe that the notice of appeal stayed the state court judgment, and the oral order converting the state court suit into a habeas corpus proceeding was of questionable efficacy.
 
 
 10
 As noted, the District Court held that defendants were not charged with their attorney's knowledge and therefore acted in the reasonable belief that filing a notice of appeal stayed the state court judgment. Though Johnson v. Glick, supra, in keeping with numerous authorities, rejects the doctrine of respondeat superior in section 1983 cases, we do not believe that non-liability of a state official for the constitutional torts of his subordinates insulates him from the constructive knowledge every client is deemed to have of matters known to his attorney when acting on his behalf in litigation. Litigants are normally "considered to have 'notice of all facts, notice of which can be charged upon the[ir] attorney.' " Link v. Wabash Railroad Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (quoting Smith v. Ayer, 11 Otto 320, 326, 101 U.S. 320, 326, 25 L.Ed. 955 (1880)); see also Prate v. Freedman, 583 F.2d 42, 48 (2d Cir.1978); United States v. Cirami, 535 F.2d 736, 740 (2d Cir.1976). Litigants are also normally charged with knowledge of all court orders in proceedings to which they are parties. See, e.g., Harriman v. Household Finance Corp., 608 S.W.2d 117, 118 (Mo.Ct.App.1980); Mayad v. Rizk, 554 S.W.2d 835, 839 (Tex.Civ.App.1977).
 
 
 11
 The nature of the objective good-faith defense mandates that these customary rules apply in section 1983 cases. The pertinent test in applying that defense is whether the federal law violated was clearly established, see Davis v. Scherer, supra, 104 S.Ct. at 3021; Harlow v. Fitzgerald, supra, 457 U.S. at 818, 102 S.Ct. at 2738, not whether a reasonable person would have known of the law. Officials are held to have constructive knowledge of established law. See Procunier v. Navarette, 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975); McCann v. Coughlin, 698 F.2d 112, 124 (2d Cir.1983). In this context there is no reason to distinguish statutory and common law from law of the case. Therefore, we hold that defendants are charged with their attorney's knowledge of the state court judge's oral order converting the state action into a habeas corpus proceeding.
 
 
 12
 However, there is serious question as to the efficacy of the oral order. Defendants initially claim that the Supreme Court's order was ineffective because it was never reduced to writing. N.Y.Civ.Prac. Law & R. Sec. 2219(a) (McKinney 1974) states in pertinent part:
 
 
 13
 An order determining a motion ... shall be in writing .... An order determining a motion made upon supporting papers shall be signed with the judge's signature or initials by the judge who made it, state the court of which he is a judge and the place and date of the signature, recite the papers used on the motion, and give the determination or direction in such detail as seems proper.
 
 
 14
 Defendants rely on Carter v. Castle Electric Contracting Co., 23 A.D.2d 768, 258 N.Y.S.2d 564 (1965); Kinner v. Kuroczka, 12 A.D.2d 383, 212 N.Y.S.2d 479 (1961); LeGlaire v. New York Life Insurance Co., 5 A.D.2d 171, 170 N.Y.S.2d 763 (1958); Parsons v. Parsons, 82 Misc.2d 454, 368 N.Y.S.2d 988 (Fam.Ct.1975); and Masters v. Masters, 55 Misc.2d 466, 285 N.Y.S.2d 815 (Fam.Ct.1967), in which section 2219(a) was applied to invalidate oral orders. However, the motions in these cases were either made on formal papers or were finally dispositive of the case. As contemplated by the last sentence of section 2219(a), the rule applies only to such formal motions and does not apply to the multitude of oral motions made during the course of a trial. See Katz v. Katz, 68 A.D.2d 536, 418 N.Y.S.2d 99 (1979); Siegel, "Practice Commentaries," N.Y.Civ.Prac. Law & R. Sec. 2219, at 137 (McKinney 1974).
 
 
 15
 Thus, if the state court judgment had been silent with regard to the nature of the proceeding, defendants would be bound by the court's oral conversion of the proceeding into one for habeas corpus. However, the judgment was not silent. As drafted by plaintiff's counsel, it affirmatively represented that the proceeding was "For Relief Pursuant to Article 78 CPLR." Although a New York court's written decision controls when in conflict with a subsequent written order specifying relief, see Rowlee v. Dietrich, 88 A.D.2d 751, 451 N.Y.S.2d 467 (1982); Siegel, "Practice Commentaries," N.Y.Civ.Prac. Law & R. Sec. 2220, at 149 (McKinney 1974), it is unclear whether New York law would allow an oral order to prevail over a conflicting written judgment. Moreover, an order of the court must be served on the losing party to become effective. See N.Y.Civ.Prac. Law & R. Sec. 2220(b) (McKinney 1974); McCormick v. Mars Associates, 25 A.D.2d 433, 265 N.Y.S.2d 1004 (1966); Cygler v. Motor Vehicle Accident Indemnification Corp., 234 N.Y.S.2d 18 (Sup.Ct.1962). Since the losing party is normally not required to take any action until served, it is arguable that the losing party need take only those actions required by the terms of the judgment with which he is served. In any event, however the New York courts might rule on the question, the efficacy of the court's oral order converting the proceeding to habeas corpus is sufficiently unclear in light of the conflicting written judgment that any right Salahuddin might have had to remain released from the SHU pending the state's appeal of the release decision was not a "clearly established right[ ] of which a reasonable person would have known." Harlow v. Fitzgerald, supra, 457 U.S. at 818, 102 S.Ct. at 2738.[5] For that reason defendants are entitled to good-faith immunity as a matter of law on the eight-day claim.
 
 
 16
 2. The remaining question is whether the District Court erred in not recognizing as claims in the case Salahuddin's references in his papers to unsanitary conditions in the SHU and a retaliatory denial of transfer. It is familiar ground that pro se complaints are to be liberally construed, see Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam); Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983). That approach assures that a person unfamiliar with the lawyerlike method of pleading claims will not have a complaint summarily dismissed if it sets forth matters that, with some refinement, can constitute legally sufficient claims. However, at some point in a lawsuit even pro se litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief. The summary judgment stage is an appropriate juncture to identify the real issues in a case. See, e.g., Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir.1972); Fed.R.Civ.P. 56(e).
 
 
 17
 In this case, Chief Judge Curtin, proceeding with care, afforded Salahuddin two opportunities to respond to the defendants' motion for summary judgment in order to "make an informed decision" without "speculating as to the nature of the claim." See Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir.1983). Salahuddin's failure to respond when twice directed to do so left the District Court no choice but to adjudicate whatever seemed likely to be the claims asserted. Chief Judge Curtin focused initially on the claim originally pleaded concerning a right to a transfer near the plaintiff's family. He correctly ruled that claim insufficient, see Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), a ruling not challenged on appeal. He pretermitted any ruling on the lawfulness of the original 60-day confinement, apparently concluding that the state court ruling in the habeas corpus proceeding satisfied that grievance. The appeal alleges no error in this regard. The District Judge then adjudicated the eight-day confinement claim and upheld the defense of qualified immunity, a ruling we have affirmed on slightly different grounds. Appellant now complains that no ruling was made on what he asserts were remaining claims concerning a retaliatory denial of transfer and unsanitary conditions in the SHU. We cannot fault the District Judge for not considering these matters to be "claims" in this lawsuit. They were not pleaded as such in the complaint, and, more significantly, they were not called to the Court's attention when Salahuddin was twice ordered to respond to the defendants' motion for summary judgment. His earlier affidavit of September 28, 1983, made no mention of such "claims." In these circumstances, the District Court did not err in granting summary judgment and dismissing the action.
 
 
 18
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 Defendants are Thomas Coughlin, Commissioner of Corrections, Harold Smith, Superintendent of Attica, and five employees of the Attica Correctional Facility: Richard Reynolds, Gerald Elmore, G. Calderon, D.E. Beitz, and A. Lippold
 
 
 [2]
 Confinement in an SHU is considerably more restrictive than general confinement. It involves confinement in a cell for most of each day and loss of religious, recreational, and other privileges. See Deane v. Dunbar, 777 F.2d 871, 872, 873 n. 2 (2d Cir.1985)
 
 
 [3]
 The state defendants represented in an affidavit of counsel submitted to the District Court that the stay of the state Supreme Court ruling was never set aside and that their state court appeal became moot on July 1, 1980. Since this is the date that Salahuddin's 60-day confinement to an SHU would have expired had he not been released a few days earlier, it appears that the defendants elected to abandon the appeal, rather than seek his return to the SHU for the few remaining days of his disciplinary sentence
 
 
 [4]
 Confining Salahuddin in an SHU pending appeal of a state court judgment releasing him would not deny him a constitutional right simply because state law concerning stays of judgments had been violated. Every violation of state law is not necessarily a denial of constitutional right. But the infliction of punishment when not authorized by state law is a classic instance of denial of liberty without due process of law
 
 
 [5]
 The fact that defendants released Salahuddin upon learning that the proceeding was for habeas corpus does not indicate that Salahuddin possessed a clear right to be released. It may be that defendants merely wished to give Salahuddin the benefit of the doubt or simply avoid further state court litigation, reasonable reactions in light of the few days then remaining on the 60-day confinement