**Clifford HOWARD, Plaintiff,**

v.

**Kenneth PIERCE, et al., Defendants.**

No. 93–CV–6452L.

United States District Court,
W.D. New York.

Oct. 22, 1997.

Betsy Hutchings, Prisoners Legal Services of New York, Ithaca, NY, for Plaintiff.

Elizabeth J. McDonald, Charles J. Genese, Office of New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Clifford Howard, who is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced this action under 42 U.S.C. § 1983 to recover damages for time that he spent in a Special Housing Unit ("SHU") from February 1993 to February 1995. In short, plaintiff alleges that after a New York State appellate court affirmed a lower court decision overturning a finding of guilt at a prison disciplinary hearing stemming from plaintiff's fatal stabbing of a fellow inmate, defendants, in contravention of the court's directives, conducted a second hearing based on the same facts, which resulted in a second finding of guilt, and over two years' confinement in SHU until a state court reversed that finding as well. Defendants are: Kenneth Pierce, a Corrections Lieutenant who authored the second misbehavior report that led to plaintiff's confinement in SHU; Larry Bates, the hearing officer at the second hearing; Donald Selsky, the Director of Special Housing for DOCS, who affirmed Bates's decision on plaintiff's administrative appeal; Robert J. McClellan, the Superintendent of Southport Correctional Facility, where the second hearing was held and where plaintiff was confined in SHU; and Thomas A. Coughlin, the Commissioner of DOCS. Both sides have moved for summary judgment.

## FACTUAL BACKGROUND

The relevant facts are largely undisputed. On April 16, 1991, inmate Roberto Martinez was fatally stabbed to death. A corrections officer thereafter filed an inmate disciplinary report against Howard alleging that Howard was the assailant. The copy given to Howard is dated April 19, 1991, and incorrectly states that the date of the incident was also April 19, 1991.

After a hearing, Howard was found guilty of violating certain DOCS rules. He was sentenced to sixty months confinement in

SHU on this matter ("first misbehavior report"). Howard then commenced an Article 78 proceeding in state court. On February 18, 1992, a justice of the Supreme Court, Cayuga County, found that the erroneous date of the incident on the first misbehavior report rendered the report invalid under state regulations, and that this error prejudiced Howard in his ability to prepare a defense. The court therefore reversed the determination of guilt, and ordered that "any and all references to the violations ... be expunged" from Howard's records.

On February 5, 1993, the Appellate Division, Fourth Department, affirmed the lower court's ruling, essentially for the same reasons relied upon by the lower court. The Fourth Department also "agree[d] with Supreme Court's conclusion that expungement of the charges [wa]s the appropriate remedy." *Howard v. Coughlin,* 190 A.D.2d 1090, 1091–92, 593 N.Y.S.2d 707 (4th Dep't 1993) (citation omitted).

In May 1992, while Supreme Court's decision concerning the first misbehavior report was on appeal, Howard was convicted on an indictment in state court of one count of murder in the second degree in connection with Martinez's death. He was sentenced to twenty-five years to life imprisonment. That conviction was affirmed on appeal by the Appellate Division and by the Court of Appeals. *People v. Howard,* 209 A.D.2d 1014, 619 N.Y.S.2d 993 (4th Dep't 1994), *aff'd,* 87 N.Y.2d 940, 641 N.Y.S.2d 222, 663 N.E.2d 1252 (1996).

On February 27, 1993, defendant Pierce filed a new, second misbehavior report ("second misbehavior report") against Howard, again charging him with various violations in connection with Martinez's murder. The second misbehavior report stated that "[r]eview of [Howard's] records indicates a felonious criminal conviction of Murder 2° for an incident on April 16, 1991 at the Auburn Correctional Facility where [Howard] assaulted and killed Inmate Roberto Martinez ..." The second misbehavior report did not reference the prior disciplinary proceedings. Pierce stated that he was directed to file this second report by First Deputy Superintendent Holland at Southport, and that Pierce

was unaware that there had been a prior hearing that had been reversed. Pierce Deposition ("Dep.") at 8, 10.

A disciplinary hearing was held before defendant Bates on March 3, 1993. At the outset of the hearing, Howard told Bates about the prior Article 78 proceeding. Bates adjourned the hearing to "mak[e] inquiry" into the matter. Hearing Transcript ("Tr."), Plaintiff's Ex. 9, at 4. Bates returned with both the Supreme Court and Appellate Division decisions, and read or paraphrased the relevant portions into the record. Tr. at 6. After listening to Howard's objections to the second hearing, Bates stated that he considered Howard to be making two claims: one based on a double-jeopardy theory, and another that "it has already been determined by the courts one way or another." Tr. at 8. Bates stated that those were "serious issues" that he would "seriously consider," and that it would "take considerable legal research on [Bates's] part," so he again adjourned the hearing. Tr. at 8.

Bates reconvened the hearing on March 11, 1993. He denied Howard's application to dismiss the charges, stating that because at the time of Howard's murder conviction in state court the original Article 78 proceeding was still on appeal concerning the first misbehavior report, and therefore, "[t]here was no reason for the Department to bring up [the second] charge at that time." Tr. at 9. He added that he did not find it unreasonable for DOCS to have filed the second misbehavior report under the circumstances, and that he did not believe that Howard had been prejudiced by DOCS's actions. Tr. at 9.

Bates also testified at his deposition in the instant case that after plaintiff alerted him to the prior judicial decisions relating to the first hearing, Bates contacted someone in DOCS's counsel's office. He did not testify to the exact content of his conversations with counsel, but apparently he was satisfied that the prior court decisions did not bar him from going ahead with the hearing, since he denied plaintiff's application to dismiss the charges.

After the hearing, on March 16, 1993, Bates found plaintiff guilty of the charges brought against him, and sentenced him to

2,555 days confinement in SHU, plus the loss of certain privileges. On plaintiff's administrative appeal, defendant Selsky affirmed the finding of guilt, but reduced the sentence to sixty months confinement and loss of privileges.

Plaintiff then commenced a second Article 78 proceeding. On February 23, 1994, Supreme Court, Albany County, issued a decision in plaintiff's favor, stating that "[t]here does not appear to be any rule which makes conviction of a criminal charge an incident or event which, in turn, can become the basis of a charge by [DOCS]." The Appellate Division, Third Department, affirmed on February 2, 1995, stating that because "expungement mandates that all reference to the underlying charges be eradicated from an inmate's record, . . . to uphold a determination of guilt in the instant proceeding and authorize departmental sanctions would in effect impose a penalty upon petitioner for actions expunged in the prior CPLR article 78 proceeding." *Howard v. Coughlin*, 212 A.D.2d 852, 622 N.Y.S.2d 134 (3d Dep't), *appeal denied*, 85 N.Y.2d 812, 631 N.Y.S.2d 288, 655 N.E.2d 401 (1995). On February 16, 1995, plaintiff was released from SHU into the general prison population.

Plaintiff commenced this action pro se on October 14, 1993. He has since retained counsel. Plaintiff does not challenge any aspect of the proceedings relating to the first misbehavior report. The second amended complaint asserts one cause of action alleging that by confining plaintiff to SHU after the Fourth Department issued its decision in plaintiff's first Article 78 proceeding, defendants deprived plaintiff of liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff seeks declaratory relief, compensatory damages in the amount of $100 per day for each day of his allegedly wrongful confinement in SHU, punitive damages from defendants Bates, Selsky and Coughlin in the amount of $25,000 each, and attorney's fees, costs and expenses.

## DISCUSSION

### I. Due Process

■ Defendants contend that plaintiff's claim fails because the filing of the second misbehavior report and the ensuing hearing were not precluded by the judicial decisions in plaintiff's first Article 78 proceeding. Defendants state that in compliance with those decisions, references to the violations found in the 1991 disciplinary hearing were expunged from plaintiff's record, and that plaintiff's subsequent murder conviction provided an adequate basis upon which to bring new charges against him based on the conviction on the indictment. Defendants also contend that the second disciplinary proceeding was not procedurally defective in any way.

At the outset, however, I note that plaintiff is not advancing a procedural due process claim, but a substantive due process claim. Plaintiff does not allege either that the manner in which the second misbehavior report was filed, or the manner in which the second disciplinary hearing was conducted, was procedurally defective. It is the fact that these events occurred at all, following the Appellate Division's decision in the first Article 78 proceeding on the first misbehavior report, that plaintiff alleges violated his constitutional rights.

■ A substantive due process claim rests on the theory that the government's conduct was fundamentally impermissible, regardless of the procedure by which it was carried out. "As distinguished from its procedural cousin, then, a substantive due process inquiry focuses on 'what' the government has done, as opposed to 'how and when' the government did it." *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir.1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). An analysis of plaintiff's claim, then, must focus not on the procedures that defendants followed, but on whether the substance of their actions was constitutionally impermissible.

"Substantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach." *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir.1992). Therefore, the courts have limited substantive due process protection to "government action that is arbi-

trary, conscience-shocking, or oppressive in a constitutional sense, but not . . . government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995).

■ "The first step in substantive due process analysis is to identify the constitutional right at stake." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994). Here, the right allegedly violated was plaintiff's liberty interest in remaining free from disciplinary confinement in SHU allegedly in contravention of a binding judicial decision.

In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that state regulations can confer a liberty interest upon an inmate only where a restraint imposes "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. at 2300. Following *Sandin,* the Second Circuit has held that any determination that a period of SHU confinement is not an atypical, significant hardship must be supported by specific factual findings. *See Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997); *accord Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997).

In the case at bar, defendants do not expressly contend that plaintiff had no liberty interest in remaining free from SHU confinement. They assert only that the question of whether plaintiff's confinement implicated a liberty interest is sufficiently unclear in the wake of *Sandin* and other authority that defendants are entitled to qualified immunity. For purposes of this decision, then, I will assume that plaintiff had a liberty interest in remaining free from SHU confinement based on the disciplinary charges relating to Martinez's murder.

Nevertheless, I find on the undisputed facts that plaintiff's claim fails. Even though the second determination of guilt was annulled in the Article 78 proceeding, I do not believe that defendants' actions in initiating and prosecuting the second misbehavior report could reasonably be found to have been "arbitrary, conscience-shocking, or oppressive in a constitutional sense . . ." *Kaluczky,* 57 F.3d at 211. Defendants' actions may have been "incorrect or ill-advised," *id.,* but

that does not amount to a deprivation of substantive due process.

In making this analysis, the court must be mindful of defendants' legitimate concerns about prison security. *See, e.g., Pell v. Procunier,* 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) ("central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves"); *Lowrance,* 20 F.3d at 537 (plaintiff's "administrative confinement was not arbitrary or conscience-shocking in the constitutional sense," since defendants had "reasonable grounds to believe that a threat to the prison's order existed").

Here, defendants were dealing with an inmate who had been convicted of murdering a fellow inmate. While plaintiff contends that this fact could legitimately only affect "institutional issues such as security classification, eligibility for temporary release, etc.," Plaintiff's Memorandum of Law in Opposition to Defendants' Cross Motion for Summary Judgment ("Plaintiff's Opposition Memorandum") at 3 n. 1, it was also not unreasonable for defendants to have sought to confine Howard to SHU based upon his murder conviction for the sake of institutional security.

In addition, neither the Supreme Court's nor the Appellate Division's decisions in the first Article 78 proceeding addressed whether a second disciplinary proceeding could be brought against Howard if he were later convicted of criminal charges arising out of Martinez's death, or if there were any other change of circumstances. Regardless of what inferences defendants arguably should have drawn from the Article 78 decisions, their prosecution of the second misbehavior report was not so clearly contrary to the language of the court decisions as to amount to the egregious type of conduct needed to support a substantive due process claim. Moreover, as will be discussed in greater detail below, it was not clear-cut at the time of defendants' actions that New York law barred defendants from filing the second misbehavior report.

■ I am also not persuaded by plaintiff's assertion that the Third Department's

1995 decision should be given preclusive effect in this action under the full-faith-and-credit statute, 28 U.S.C. § 1738, which requires federal courts to give the same effect to a state court judgment that that judgment would be given by the courts of the state in which the judgment was rendered. "Under New York law, the doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue 'has necessarily been decided in the prior action and is decisive of the present action,' and (2) there has been 'a full and fair opportunity to contest the decision now said to be controlling.'" *Giakoumelos v. Coughlin,* 88 F.3d 56, 59 (2d Cir.1996) (quoting *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)). The issue in plaintiff's Article 78 proceeding was whether the second disciplinary proceeding was permissible under New York State law. The issue in the case at bar was whether the disciplinary hearing violated plaintiff's federal constitutional rights. Collateral estoppel is therefore inapplicable to this case.

## II. Qualified Immunity

■ Even if defendants' actions could be considered to have violated plaintiff's due process rights, however, defendants are entitled to qualified immunity. Qualified immunity shields public officials "from civil damages liability insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or insofar as 'it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights,' *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir. 1994)." *Simms v. Village of Albion,* 115 F.3d 1098, 1106 (2d Cir.1997); *accord Brown v. City of Oneonta,* 106 F.3d 1125, 1130–31 (2d Cir.1997).

■ "Summary judgment in favor of public officials may be appropriate when a qualified immunity defense is based upon a showing that it was not clear at the time of the officials' acts that the interest asserted by

the plaintiff was protected by federal law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). Therefore, "[t]o defeat an official's claim of qualified immunity, the individual's right must have been clearly established at the time of the alleged violation." *La-Bounty v. Coughlin,* 1996 WL 711497 *1 (S.D.N.Y.1996). (citations omitted). In determining whether a right was clearly established, the court should consider "(1) whether the right in question was defined with 'reasonable specificity,' (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Brown,* 106 F.3d at 1131 (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d. Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)).

Plaintiff contends that his right not to be confined in SHU following the first Article 78 proceeding was clearly established by the Second Circuit's decision in *Salahuddin v. Coughlin,* 781 F.2d 24 (2d Cir.1986). In *Salahuddin,* the plaintiff inmate was ordered confined to SHU following a disciplinary hearing. He brought an Article 78 proceeding to challenge that determination, and the state court judge orally converted the proceeding into a habeas corpus proceeding. The judge subsequently ruled in the plaintiff's favor, and ordered him released from SHU. The defendants appealed.

■ Under New York law, filing a notice of appeal automatically stays enforcement of an Article 78 proceeding, but does not automatically stay a habeas corpus judgment. Because the face of the state court's written order indicated that the plaintiff had been granted relief in an Article 78 proceeding, the defendants assumed that their notice of appeal stayed enforcement of the judgment, and they did not release the plaintiff from SHU until eight days after receiving the judgment and notice of appeal, when they were informed by the plaintiff's attorney that the state court proceeding had been converted to a habeas corpus proceeding.

Plaintiff then commenced a § 1983 suit, alleging that defendants had confined him in

SHU for that eight-day period without due process of law. The district court granted summary judgment for the defendants on the basis of qualified immunity.

On appeal, the Second Circuit affirmed. The court held that the defendants were entitled to qualified immunity because under New York law, it was unclear whether the state court's oral conversion of the Article 78 proceeding to a habeas corpus proceeding was effective, given the later written judgment referring to the proceeding as an Article 78 proceeding.

The defendants, however, did not deny that they had confined the plaintiff to SHU for eight days without legal justification, and that they had thereby deprived him of a protected liberty interest without due process of law. In a footnote, the Second Circuit observed that

> Confining Salahuddin in an SHU pending appeal of a state court judgment releasing him would not deny him a constitutional right simply because state law concerning stays of judgments had been violated. Every violation of state law is not necessarily a denial of constitutional right. But the infliction of punishment when not authorized by state law is a classic instance of denial of liberty without due process of law.

*Id.* at 27.

■ Plaintiff contends that this statement shows that his right not to be confined following the termination of the first Article 78 proceeding was clearly established at the time in question. What must be remembered, however, is that "[a]lthough a right may be clearly established in the abstract, the particular parameters of that right may not be. In other words, whether that right was violated under the particular circumstances present in the plaintiff's case may not have been so clearly established that the defendant should have known that he was violating the plaintiff's rights." *Dale v. Kelley,* 908 F.Supp. 125, 136 (W.D.N.Y.1995) (although right not to be subjected to warrantless arrest without probable cause was clearly established at time of plaintiff's arrest by defendant, unlawfulness of defendant's action was not apparent), *aff'd,* 95 F.3d 2 (2d

Cir.1996). In fact, *Salahuddin* itself demonstrates that principle; although the right not to be subjected to punishment unauthorized by law was clearly established, the defendants in that case were entitled to immunity because they reasonably could have believed that their actions were authorized.

In the context of this case, then, while it may be true that it was clearly established in 1993 that inmates had a right not to be held in SHU confinement when that confinement was not authorized by state law, defendants will still be entitled to qualified immunity if they reasonably could have believed that their conduct did not violate that right, *i.e.,* that plaintiff's confinement was authorized under New York law. Based on the law as it existed at the time of defendants' actions, I find as a matter of law that they could so have believed.

In support of his assertion that it was clearly established in 1993 that defendants had no authority to commence a second disciplinary proceeding against Howard based on the same incident as the 1991 proceeding, plaintiff notes that the Appellate Division's decision in the second Article 78 proceeding relied on a prior Third Department case, *Davidson v. Coughlin,* 154 A.D.2d 806, 546 N.Y.S.2d 247 (3d Dep't 1989), for the proposition that "expungement mandates that all reference to the underlying charges be eradicated from an inmate's record," and that the court felt "constrained to affirm the judgment of Supreme Court granting the petition." Plaintiff contends that the court's reliance on prior case law, and its statement that it was "constrained" to affirm demonstrate that the court was simply following established precedent.

A reading of *Davidson* and the other two cases cited by the Third Department, however, does not reveal that the court's decision in Howard's case was a foregone conclusion. First, as the Third Department itself stated, *Davidson* stands only for the proposition that "[a]n order of expungement mandates that all references to the underlying charges be removed from the inmate's record." *Davidson,* 154 A.D.2d at 806, 546 N.Y.S.2d 247 (quoting *Wong v. Coughlin,* 150 A.D.2d 832,

833, 540 N.Y.S.2d 384 (3d Dep't 1989)). *Davidson* said nothing at all about whether a subsequent criminal conviction might justify commencing a new disciplinary proceeding based on the same conduct. In *Davidson*, the inmate petitioner had prevailed in his Article 78 proceeding challenging a determination by DOCS finding him guilty of attempted escape. The lower court signed the inmate's proposed judgment ordering that all references to "the underlying charges and [the] alleged misconduct on which [they were] based" be expunged from the inmate's files. The defendants appealed, arguing that the order was overly broad and required them to expunge documents that had no detrimental effect on the inmate's status, were not related to the underlying disciplinary proceeding, and were integral to ongoing federal litigation instituted by the inmate against the defendants. The Third Department affirmed, stating that "[i]t is beyond argument that allowing references to charges that have been dismissed and other mischievously equivocal information that might be unfairly construed to remain in prisoners' records leaves inmates in jeopardy of having these references unfairly used against them." *Davidson*, 154 A.D.2d at 806–07, 546 N.Y.S.2d 247 (citation omitted). The court added that any documents needed for the federal litigation should be turned over to the state Attorney General with the express proviso that they be used only for defensive purposes.

Thus, *Davidson* in no way "clearly established" that defendants were barred from commencing the second disciplinary proceeding in 1993. It simply did not address the scenario at issue in this case at all.

The other two cases relied upon by the Third Department in Howard's case likewise did not address whether new disciplinary proceedings may ever be brought after an expungement order is issued. In *Wong*, the court held that although "expungement mandates that all references to the underlying charges be removed from the inmate's record," it was permissible for DOCS to retain, separately from the inmate's file, tapes of the prior administrative proceeding that the inmate petitioner had successfully challenged

in an Article 78 proceeding, since retention of the tapes would not prejudice the inmate. *Wong*, 150 A.D.2d at 833, 540 N.Y.S.2d 384. In *Inman v. Coughlin*, 131 A.D.2d 900, 516 N.Y.S.2d 350 (3d Dep't 1987), the court held that the defendants had not complied with a prior expungement order because an examination of the inmate's file "reveal[ed] numerous references to the charges underlying the Superintendent's proceeding" that was the subject of the expungement order. *Id.* at 901, 516 N.Y.S.2d 350. The court held that "[s]ince expungement should serve the purpose of restoring petitioner to the status he enjoyed prior to the commencement of the Superintendent's proceeding, compliance with the expungement order requires that all references to the proceeding, the disposition and the underlying charges must be vacated from petitioner's record." *Id.*

All that these cases stand for, then, is the proposition that an expungement order requires that all references to the underlying charges be removed from the inmate's record. They do not discuss the propriety of subsequent proceedings based on an intervening conviction or other change in circumstances, much less "clearly establish" any law in that regard. The Third Department's statement in Howard's case that it was "constrained" to affirm the order granting his petition, then, seems to mean not that the court's decision was mandated by prior case law, but that the court believed that under the logic of, and the general principles underlying those cases, to permit the second finding of guilt against Howard to stand would have been unfair in light of the prior expungement order.

I also note that plaintiff has not pointed to a single case prior to the Third Department's 1995 decision in this case that squarely addressed the situation in Howard's case. Plaintiff cites *Hartje v. Coughlin*, 70 N.Y.2d 866, 523 N.Y.S.2d 462, 517 N.E.2d 1348 (1987), and several Appellate Division cases for the proposition that when a court reverses a determination of guilt in a disciplinary proceeding, the proper remedy is either expungement of the charges or remittal for a new hearing, the latter generally being reserved for cases involving curable procedural

breaches.[1] While these cases do stand for the general proposition that, following an expungement order, DOCS cannot simply commence a new disciplinary proceeding based on the same charges, they do not address whether a change in circumstances (such as a subsequent criminal conviction) might permit a new proceeding. The Third Department so held in Howard's case, but prior to that the law in this area was certainly not clearly established.

Plaintiff's strained reading of *Allah v. Le-Fevre*, 132 A.D.2d 293, 522 N.Y.S.2d 321 (3d Dep't 1987), also fails to support his contention that the law in this area was clearly established before 1993. The court in *Allah* stated that "violations of constitutional rights necessitate expunging the tainted proceedings," and cited *Jacobson v. Coughlin*, 523 F.Supp. 1247 (N.D.N.Y.1981), *aff'd*, 688 F.2d 815 (2d Cir.), *cert. denied*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 75 (1982), in support of that proposition. *Allah*, 132 A.D.2d at 293, 522 N.Y.S.2d 321. The court in *Jacobson*, which found that the defendants had committed "repeated violations of [the plaintiff inmate's] constitutional rights," directed the defendants to expunge all records concerning two disciplinary hearings from the plaintiff's files, and enjoined the defendants from pursuing any further disciplinary proceedings based on the events that gave rise to the plaintiff's § 1983 action. *Jacobson*, 523 F.Supp. at 1255. To read into the *Allah*

court's citation of *Jacobson* the principle that expungement necessarily entails barring any further disciplinary proceedings simply imputes a far broader meaning to the court's statement that its words can support.

Additionally, some case law prior to 1993 suggested that bringing new charges in situations like Howard's may have been permissible, or that the issue was at least an open question. In *Davidson v. Smith*, 69 N.Y.2d 677, 512 N.Y.S.2d 13, 504 N.E.2d 380 (1986), the Court of Appeals held that disciplinary proceedings against the petitioner inmates had to be annulled because the rules that they were charged with violating had not been filed with the Secretary of State. The court added that "[w]hether or not new charges under filed regulations can hereafter be lodged against petitioners for the alleged misconduct is an issue we do not reach on this appeal." *Id.* at 679, 512 N.Y.S.2d 13, 504 N.E.2d 380.

Defendants also cite *People ex rel. Williams v. Rodriguez*, 108 A.D.2d 1007, 485 N.Y.S.2d 395 (3d Dep't), *appeal denied*, 65 N.Y.2d 603, 491 N.Y.S.2d 1028, 481 N.E.2d 574 (1985). In *Rodriguez*, the habeas corpus petitioner had been on parole when he was arrested and charged with various crimes relating to an alleged burglary. Shortly thereafter, a parole violation warrant was issued based upon that incident. When the arresting officer failed to appear at the pre-

---

**1.** Although the remedy ordered in Howard's first Article 78 proceeding was expungement, the entry of an erroneous date on the misbehavior report would seem to be the kind of curable misstep that could have been cured on remittal for a new hearing. The Fourth Department's citation to *Vogelsang v. Coombe*, 105 A.D.2d 913, 482 N.Y.S.2d 348 (3d Dep't 1984), *aff'd*, 66 N.Y.2d 835, 498 N.Y.S.2d 364, 489 N.E.2d 251 (1985), as support for its holding that expungement was the proper remedy, *see Howard*, 190 A.D.2d at 1091–92, 593 N.Y.S.2d 707, indicates that the Fourth Department may have believed that too much time had elapsed for remittal to be appropriate, since the court in *Vogelsang* held that a new hearing would be inappropriate, in part because 20 months had elapsed since the alleged misconduct and the relevant witnesses might have been unavailable. *Vogelsang*, 105 A.D.2d at 914, 482 N.Y.S.2d 348.

I also note that there is New York case law holding that an erroneous date on a misbehavior report may not even require reversal of a finding

of guilt in the first place. *See Correa v. Hanslmaier*, 224 A.D.2d 855, 856, 638 N.Y.S.2d 206 (3d Dep't 1996) (mistaken date on misbehavior report did not warrant annulment of determination of guilt, since petitioner indicated at hearing that he knew the correct date of the incident and, therefore, was not prejudiced by the error); *McDowell v. Coughlin*, 222 A.D.2d 915, 916, 635 N.Y.S.2d 760 (3d Dep't 1995) (misbehavior report sufficiently apprised inmate of charges against him, even though correction officer who prepared report mistakenly entered wrong date on which incident occurred); *Warren v. Irvin*, 184 A.D.2d 1059, 1060, 584 N.Y.S.2d 365 (4th Dep't 1992) (inmate was not prejudiced by fact that wrong date was set forth on misbehavior report where he was aware of that fact at the time of the hearing but did not seek an adjournment, his ability to present a defense was not impaired, and he took the position throughout the hearing that he did not commit the alleged act).

liminary parole revocation hearing, the hearing officer found no probable cause to sustain the charges, and the warrant was withdrawn. Several months later, the petitioner was convicted at trial of burglary and related charges stemming from the same incident. A new parole violation warrant was then issued based on the conviction, and after a hearing, the petitioner's parole was revoked.

The petitioner then commenced a habeas corpus proceeding, alleging that the state was prohibited "from issuing a second warrant based upon the same conduct upon which [the first warrant] had been issued." The lower court dismissed the petition, and on appeal, the Appellate Division affirmed, stating that "[c]ontrary to petitioner's assertion, the second proceeding did not amount to a mere rehash of the first proceeding, as it was based on a new circumstance, i.e., his conviction." *Id.* at 1008, 485 N.Y.S.2d 395 (citation omitted).

Admittedly, these cases are not factually identical to Howard's, but then neither are any of the cases relied upon by plaintiff. What all of this means is simply that in 1993 it was not clearly established that a prior expungement order would permanently bar any further disciplinary proceedings based on the same conduct, even where the inmate had in the interim been convicted of criminal charges arising out of that conduct. In fact, plaintiff himself implicitly recognizes this, for he states in his brief that certain cases prior to 1993 "put the defendants on notice that it was *unlikely* that the state courts would consider a criminal conviction a basis for unilaterally reopening a prison disciplinary hearing which a court had ordered reversed and expunged for constitutional error." Plaintiff's Opposition Memorandum at 16 (emphasis added).[2] To say that it is "unlikely" that the courts will rule in an official's favor is not the same as saying that it is clearly established that the official's act is unlawful.

In short, defendants could have reasonably believed that their actions relating to filing the second misbehavior report and prosecuting the matter in the second disciplinary proceeding as well as plaintiff's ensuing confinement in SHU, did not violate plaintiff's clearly established rights. They are therefore entitled to qualified immunity.[3]

**CONCLUSION**

Plaintiff's motion for summary judgment (Item 42) is denied. Defendants' cross-motion for summary judgment (Item 51) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

---

2. The expungement order in Howard's case was not based on any constitutional violation, but on a procedural flaw under state law.

3. My findings that defendants did not violate plaintiff's substantive due process rights, and that they are entitled to qualified immunity, makes it unnecessary for me to address defendants' contention that some of the defendants cannot be held liable because they were not personally involved in the alleged constitutional deprivation.